[Sac. No. 6377. In Bank. Feb. 25, 1953.]

GEORGE C. FAULKNER et al., Appellants, v. CALIFOR-
NIA TOLL BRIDGE AUTHORITY et al., Respondents.

Byers, Burd & Fraser for Appellants.

Edmund G. Brown, Attorney General, E. G. Funke, Assistant Attorney General, Ralph W. Scott, Deputy Attorney General, and Robert E. Reed, Attorney for the Department of Public Works, for Respondents.

SCHAUER, J.—Plaintiffs[1] appeal from a judgment entered on the sustaining without leave to amend of defendants'[2]

---

[1]Named as plaintiffs are: George C. Faulkner, on behalf of himself and all other prospective users of the proposed Richmond-San Rafael Bridge; G. S. Stone, on behalf of himself and all other citizen taxpayers of the State of California; Herbert Schulze, on behalf of himself and all other farmers and landowners in Sonoma County; Petaluma Sportsmen Club, a California nonprofit corporation, on behalf of itself and all owners of salt marsh lands bordering on and contiguous to the San Francisco Bay north of the Golden Gate Bridge on the west side of San Francisco Bay and north of the Berkeley Pier on the east side of San Francisco Bay.

[2]Named as defendants are California Toll Bridge Authority, a public corporation; the five individual members of the Authority; and Frank B. Durkee, as Director of the Department of Public Works of the State of California.

The Toll Bridge Authority is ''composed of the Governor, Lieutenant Governor, the Director of Public Works, Director of Finance, and a

general demurrer to plaintiffs' complaint for injunction, mandamus, and general relief. In plaintiffs' language, "This is an action to restrain the California Toll Bridge Authority and the Department of Public Works from proceeding with the construction and financing of the Richmond-San Rafael Bridge. . . . The complaint seeks a temporary restraining order and a preliminary and permanent injunction restraining Defendants from proceeding with the proposed construction work and the financing thereof. Also sought are a . . . judgment declaring invalid certain resolutions of Defendants . . . and the acts of Defendants committed pursuant thereto, and a writ of mandate to compel the California Toll Bridge Authority to grant Plaintiffs herein a fair and adequate hearing on the question of whether a bridge or an earth fill type of crossing should be built." We have concluded that the demurrer was properly sustained and that the judgment should be affirmed.

The complaint, framed in five causes of action, is based upon three theories. So far as here material, allegations common to all causes of action are: On September 23, 1952, defendants held a hearing in Sacramento concerning the proposed construction of a highway toll bridge (hereinafter termed the bridge) between Richmond and San Rafael (i.e., between the county of Contra Costa and the county of Marin), which was continued to September 26, 1952. On the latter date, in Sacramento, defendant California Toll Bridge Authority (hereinafter termed the authority), "adopted a resolution approving the opinion, determination, and recommendation of the Department of Public Works to construct the . . . Bridge, and authorizing the issuance of revenue bonds to obtain funds for construction . . . ; said Authority also adopted a resolution directing the preparation of a resolution authorizing the issuance of toll bridge revenue bonds and an Official Statement in connection therewith." On November 7, 1952, the authority adopted the following resolutions: (a) "authorizing the creation of an issue of not exceeding

person or officer of the State appointed by the Governor" (Sts. & Hy. Code, § 30050); both the Director of Public Works (Gov. Code, § 14002) and the Director of Finance (Gov. Code, § 13002) are appointed by and hold office at the pleasure of the governor.

Section 14004 of the Government Code provides that the Director of Public Works "shall perform all duties, exercise all powers and jurisdiction, assume and discharge all responsibilities, and carry out and effect all purposes vested by law in the department [of Public Works] except as otherwise expressly provided by law."

$72,000,000 Richmond-San Rafael Toll Bridge Revenue Bonds and providing for the initial issuance of $62,000,000 principal amount of Series A bonds''; (b) ''approving the official statement of the Authority relating to said Series A Bonds''; (c) ''authorizing the sale of Series A bonds for the purpose of providing funds for the construction of the Bridge and directing publication of Notice of Sale of'' such bonds; (d) ''directing the Department of Public Works to call for bids on construction of the substructure and superstructure of said Bridge; . . . and to fix the date for the opening of said bids at not later than December 22, 1952.''

Plaintiffs' first theory (upon which their first three alleged causes of action are based) is that the authority's resolutions of September 26 and of November 7, 1952, constituted ''regulations'' within the meaning of the sections of the California Administrative Procedure Act (hereinafter termed the act) governing ''quasi-legislative'' action of administrative agencies, and that the authority's admitted failure to comply with such sections in connection with the resolutions was unlawful.

The act is set forth in chapters 4 and 5 of title 2, division 3, part 1, of the Government Code, and it is upon certain provisions of chapter 4 (i.e., §§ 11370-11445) that plaintiffs rely.

Section 11371 provides, so far as here material, that as used in chapter 4 '' 'Regulation' means every rule, regulation, order, or standard of general application . . . adopted by any state agency[3] to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agency.'' Section 11380 requires that ''Every state agency shall: (a) File with the Secretary of State a certified copy of every regulation adopted by it except one which: (1) Establishes or fixes rates, prices or tariffs. (2) Relates to the use of public works, including streets and highways, under the jurisdiction of any state agency when the effect of such order is indicated to the public by means of signs or signals. (3) Is directed to a specifically named person or to a group of persons and does not apply generally throughout the State. . . .'' Sections 11409 through 11415 provide for publication in the California Administrative Code (and Register) of all regulations re-

[3]Section 11371 also provides that '' 'State agency' does not include an agency in the judicial or legislative departments of the State Government.''

quired to be filed with the Secretary of State, and for sale of copies of such Code and Register. Sections 11420 through 11427 have as their purpose the establishment of "basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations . . . [which] are applicable to the exercise of any quasi-legislative power conferred by any statute heretofore or hereafter enacted . . ." except that they do not apply "to any regulation not required to be filed with the Secretary of State. . . ." (§§ 11420, 11421[4].)

It is plaintiffs' contention that the authority's resolutions here involved were "regulations" required to be filed with the Secretary of State under the provisions of section 11380, that adoption by the authority of such resolutions constituted exercise of a "quasi-legislative power," and that the authority's failure to comply with section 11380 and with the procedural requirements of sections 11420 through 11427 was therefore unlawful and renders invalid the resolutions and any action taken thereunder.

 We are of the view, however, that defendants are correct in their position that the resolutions were not of "general application . . . adopted . . . to implement, interpret, or make specific the law enforced or administered by" the authority "or to govern its procedure," and hence, regardless of how they might be described or identified otherwise, do not fall within the definition (§ 11371) of a regulation which must be filed with the Secretary of State. Rather, they were adopted for particular application to the subject of either approving or disapproving, under the provisions of the California Toll Bridge Authority Act (Sts. & Hy. Code, § 30000 et seq.), the recommendation of the Department of Public Works that the bridge be constructed, and of authorizing the issuance of revenue bonds following approval of such recommendation (Sts. & Hy. Code, § 30200[5]). Plaintiffs argue that the resolutions are of general application in that the tolls to be collected on the bridge affect the public generally, and that the bonds to be issued may be purchased by anyone in the world. However, inasmuch as the "application" so urged by plaintiffs relates to only one particular bridge, and solely to the specific project described, and as the resolutions (as alleged) do not purport to treat gen-

[4]Section 11421 also sets forth other exceptions, not here material.
[5]Section 30200 is quoted in full on pages 326-327, *post.*

erally with, for instance, all bridges or all toll bridges or any open class under the jurisdiction of the authority, we are satisfied that plaintiff's position in this respect is without merit. Moreover, it is to be noted that section 11380 (Gov. Code) expressly excepts a regulation which "Establishes or fixes rates, prices or tariffs," or "Is directed to a specifically named person or to a group of persons and does not apply generally throughout the State."

Furthermore, it appears that the pertinent resolutions are not calculated or effective to "implement, interpret, or make specific the law enforced or administered by" the authority (§ 11371), but rather that they were adopted in the course of compliance with the statutory mandate that the authority act, one way or the other, upon the recommendation of the Department of Public Works that the bridge be constructed (Sts. & Hy. Code, § 30200). In other words, the resolutions constituted steps in the performance of a statutory duty, rather than acts which would "implement, interpret, or make specific the law."

Since the resolutions do not fall within the definition of a "regulation" required to be filed with the Secretary of State, it becomes unnecessary to determine whether the authority, in adopting them, was exercising a "quasi-legislative power" as that term is used in section 11420 of the Government Code.

Plaintiffs' second theory forms the basis of their fourth alleged cause of action. They aver that a portion of the proposed Richmond-San Rafael Bridge will be within 10 miles of the San Francisco-Oakland Bay Bridge, that revenue bonds are still outstanding against the latter bridge, and that such bonds were on November 27, 1951, authorized by the authority and issued, but "were dated and bore interest from September 1, 1951." It is plaintiffs' contention that construction of the new bridge would violate the so-called 10-mile limit within which the law once provided (Sts. & Hy. Code, §§ 30350, 30351) that other crossings should not be constructed while revenue bonds were "outstanding" against the Bay Bridge. It may further be noted that under section 30353, Streets and Highways Code, the prohibitions of the 10-mile limit "constitute a contract to that effect for the benefit of the holders of" outstanding bonds.

By a 1951 amendment of section 30354 of the Streets and Highways Code, effective September 22, 1951, a highway bridge or other crossing between the county of Marin and the

county of Contra Costa was excepted from such 10-mile limit. Plaintiffs argue that since the Bay Bridge bonds are dated September 1, 1951, they, or their subsequent holders, acquired all the rights provided by the law in existence at that time and could not be affected by the September 22 amendment. Inasmuch as the bonds could take effect and bear interest only from the date of issuance and delivery (*City of Venice* v. *Lawrence* (1914), 24 Cal.App. 350, 355 [141 P. 406]; *Merced River Elec. Co.* v. *Curry* (1910), 157 Cal. 727, 730 [109 P. 264]), it is apparent that since they were not issued, and thus not "outstanding," until November 27, 1951, they were subject to the September 22 amendment excepting the proposed new bridge from the 10-mile limit. It follows that plaintiffs' second theory is likewise untenable.

Plaintiffs state that their third theory (fifth cause of action) is that "the Authority has made no adequate study and investigation of the earth fill type of crossing as compared with the Bridge and that such constitutes an abuse of discretion." The averments of the complaint relative to this theory are that defendants "have decided to build said Bridge without investigating other types of structures or the costs thereof and more particularly . . . an earthen fill type of crossing or the costs thereof . . . [and] have failed also to study and investigate the costs of insurance and physical operation and maintenance of an earth fill barrier as compared with said Bridge or the comparable durability of said structures in the face of weather, earthquakes, and bombing attacks, or the comparable ease of widening said structures to meet future traffic needs of the San Francisco Bay area . . . Plaintiffs are informed and believe that said Bridge will not be able to carry rail transportation facilities at any future time . . . and . . . that an earth fill type of crossing could carry rail transportation facilities . . . Defendants have failed to investigate and consider in their predictions of the future transportation needs of the Bay Area whether rail transportation facilities are necessary. The planned Bridge is a 2-lane bridge and is inadequate for present traffic needs of San Francisco Bay Area." Plaintiffs further allege that "Defendants have decided to build said Bridge without investigating or considering whether or not the building of said Bridge would interfere either physically or financially with structures which might be built in the future in and across San Francisco Bay for water conservation purposes." Finally,

it is alleged that "such insufficient investigation, study and consideration as heretofore alleged constitutes arbitrary, capricious and unreasonable conduct on behalf of Defendants and their decision to construct said Bridge based upon such insufficient investigation constitutes an abuse of the discretion vested in said Authority by the provisions of the Toll Bridge Authority Act." Plaintiffs ask the issuance of a writ of mandamus requiring the authority and the Department of Public Works to investigate, study, and consider an earth fill type of crossing, and whether the construction of the bridge "will interfere in any way with the construction of water conservation facilities in and about the North San Francisco Bay Area."

 It is elementary that mandamus issues only "to compel the performance of an act which the law specially enjoins" (Code Civ. Proc., § 1085) and will not lie to control discretion within the area lawfully entrusted to the administrative agency (*Lindell Co.* v. *Board of Permit Appeals* (1943), 23 Cal.2d 303, 315 [144 P.2d 4]; 16 Cal.Jur. 808-810, and cases there cited). It is our view that plaintiffs have not shown that the Authority has failed to perform any act "specially enjoined" by the Toll Bridge Authority Act. That act (Sts. & Hy. Code) provides:

Section 30100: "Whenever in the opinion of the authority *and* of the department it is necessary or desirable so to do, the authority shall authorize and direct the department to build or acquire for and in the name of the State any or all of the following: (a) Toll bridges, tubes or other toll highway crossings across water, bays, arms of bays, straits, rivers, and streams in California . . ." (Italics added.)

Section 30150: "The department shall have full charge of the acquisition and construction of all toll bridges and other toll highway crossings . . . authorized by the authority . . ."

Section 30200: "Whenever the department determines that it is for the best interests of the public highways in the State that a new toll bridge or other highway crossing be constructed and operated by the State, the director of the department shall submit its recommendation to that effect to the authority, together with preliminary estimates of the cost of construction thereof, an estimate of the amount required to be raised for that purpose by the issuance of revenue bonds, and a statement of the probable amount of money, property, materials, or labor to be contributed from other sources in aid of the construction.

"If a majority of the members of the authority concurs in the recommendation of the department, the authority shall adopt a resolution declaring that public interest and necessity require the construction of the toll bridge or other highway crossing and authorizing the issuance of revenue bonds for the purpose of obtaining funds in an amount not in excess of that estimated to be required for the construction thereof."

No statutory provision or other authority has been cited to, or discovered by, us which specifically directs the authority to consider a crossing other than one recommended to it by the department, or to study the problem of construction of water conservation facilities. The question in this respect therefore is narrowed to a consideration and determination of whether the complaint shows that the authority, in resolving the issues which were before it, abused its discretion by failing to consider "other types of structures or the costs thereof and more particularly . . . an earthen fill type of crossing" in the course of deciding whether "public interest and necessity" required it to concur in the recommendation of the department that the bridge be constructed "for the best interests of the public highways."

We are of the view, for the several reasons hereinafter stated, that no such abuse of discretion by the authority has been shown. *Firstly*, the authority is not directed or empowered to study or consider water conservation problems as such; their only possible pertinency here would depend upon a showing that something related thereto also related adversely to the construction of the proposed bridge and rendered the approval of its construction, upon the evidence which was before it, an abuse of discretion by the authority. *Secondly*, plaintiffs have alleged as a part of their third stated cause of action that "At the hearing on September 23, 1952, the Authority allowed representatives of Plaintiffs and other opponents to the plan to build said Bridge about one and one-half hours to present their arguments and facts against the building of said Bridge. The Authority allowed the proponents of said Bridge to present their views to the Authority for about four hours." It thus directly appears that the authority did grant plaintiffs a substantial opportunity to be heard and did consider arguments and facts advanced by them. The fact that proponents of the bridge were allowed a greater period of time to present their views and were also permitted (according to plaintiffs' allegations) to again appear before the authority at the hearing of September 26,

1952, does not support plaintiffs' contention that their objections to the bridge as opposed to an earth fill crossing were not studied and considered before the authority reached a decision.

██ ██ It is, of course, the rule that "Since the enactment of section 452 of the Code of Civil Procedure . . . it has been generally recognized that in the construction of a pleading for the purpose of determining its effect 'its allegations must be liberally construed, with a view to substantial justice between the parties' " (*Mix* v. *Yoakum* (1927), 200 Cal. 681, 687 [254 P. 557]) but it is also the law that even while giving to a pleading "the most liberal construction permitted by section 452 of the Code of Civil Procedure no intendment can be indulged in that the pleader has not stated his case as strongly as it was possible so to do" (*Haas* v. *Greenwald* (1925), 196 Cal. 236, 243 [237 P. 38, 59 A.L.R. 1493] ; *Higgins* v. *Security Trust & Sav. Bank* (1928), 203 Cal. 398, 401 [264 P. 744]). ██ Furthermore, although a plaintiff may plead inconsistent counts or causes of action in his complaint (see *Wilkerson* v. *Seib* (1942), 20 Cal.2d 556, 563-564 [127 P.2d 904]) even where, as here, it be verified, if there are no contradictory or antagonistic facts (see *Steiner* v. *Rowley* (1950), 35 Cal.2d 713, 718-719 [221 P.2d 9] ; *Beatty* v. *Pacific States S. & L. Co.* (1935), 4 Cal.App.2d 692, 697 [41 P.2d 378]), we are in accord with the view stated by the court in the Beatty case that the rule was not "intended to sanction the statement in a verified complaint of certain facts as constituting a transaction in one count or cause of action, and in another count or cause of action a statement of contradictory or antagonistic facts as constituting the same transaction. In short, the rule does not permit the pleader to blow both hot and cold in the same complaint on the subject of facts of which he purports to speak with knowledge under oath." ██ Here the more specific facts affirmatively alleged in the third cause of action (that the authority "allowed representatives of Plaintiffs and other opponents to the plan . . . about one and one-half hours to present their arguments and facts against the building of said Bridge . . . [and] allowed the proponents of said Bridge to present their views to the Authority for about four hours") must be accepted as precluding our construing the more general and negative allegations of the fifth cause of action to mean that the authority did in truth proceed without conducting any hearing or investigation and

without permitting or considering evidence or arguments pertinent to the proper discharge of its duty.

*Thirdly,* it is to be borne in mind in relation to this fifth cause of action that the complaint here shows that a duly constituted state agency has conducted a hearing and taken action which, upon the face of the proceedings, appears to be not only within its allotted jurisdiction but also a proper discharge of its statutory duty. In reviewing the acts of a state board it has been held that a petition which alleges an abuse of discretion and which also incorporates a transcript by reference will be examined in the light of the evidence contained in the transcript to determine whether a cause of action is stated. (*Sipper* v. *Urban* (1943), 22 Cal.2d 138, 141 [137 P.2d 425]; see, also, *Dare* v. *Board of Medical Examiners* (1943), 21 Cal.2d 790, 795-800 [136 P.2d 304]; *Russell* v. *Miller,* (1943), 21 Cal.2d 817, 819-820 [136 P.2d 318].) Allegations that the acts of a commission or board were ''arbitrary, capricious, fraudulent, wrongful and unlawful,'' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer. (*Meyer* v. *Board of Public Works* (1942), 51 Cal.App.2d 456, 470 [125 P.2d 50]; *Jones* v. *O'Toole* (1923), 190 Cal. 252, 255 [212 P. 9].)

 Subject, of course, to the power of the court to exercise an independent judgment on the evidence in certain review proceedings (see e.g., *Dare* v. *Board of Medical Examiners* (1943), *supra,* 21 Cal.2d 790, 794; Code Civ. Proc., § 1094.5) it has been stated as a general principle, gleaned from the cases, that ''The courts have nothing to do with the wisdom or expediency of the measures adopted by an administrative agency to which the formulation and execution of state policy have been entrusted, and will not substitute their judgment or notions of expediency, reasonableness, or wisdom for those which have guided the agency.'' (2 Cal. Jur.2d 361, § 219; see, also, *Hansen* v. *State Board of Equalization* (1941), 43 Cal.App.2d 176, 179 [110 P.2d 453]; *Maxwell* v. *Civil Service Com.* (1915), 169 Cal. 336, 339 [146 P. 869]; *Rehfeld* v. *San Francisco* (1933), 218 Cal. 83, 85 [21 P.2d 419].)

 A concise and sufficiently comprehensive statement of the presumptions which ordinarily attach to acts of state agencies when they are attacked in judicial proceedings is found (together with citations of authorities) in 2 California

Jurisprudence 2d 355-356, section 216: ''The findings and the determination come before the reviewing court with a strong presumption as to their correctness and regularity. Thus, it is presumed, in the absence of evidence establishing [or pleading alleging] the contrary, that the necessary facts to support the determination were ascertained and found, that the agency duly considered the evidence adduced at the administrative hearing, that official duty was regularly performed, and that the agency applied the proper standard or test in reaching its decision.''

From what has been said it appears that plaintiffs' pleading must be examined in the light of the presumptions noted and that plaintiffs, to state a cause of action warranting judicial interference with the official acts of defendants, must allege much more than mere conclusions of law; they must aver the specific facts from which the conclusions entitling them to relief would follow.

Allegations that the investigation of an earthen fill type of crossing by defendants was ''insufficient'' and that their action was ''arbitrary, capricious and unreasonable'' and ''constitutes an abuse of the discretion vested in said Authority'' are, as hereinabove indicated, only conclusions of law and are not admitted by the demurrer. Since the presumptions, as above noted, are all in favor of the regularity of the authority's actions, since it does appear that the authority conducted a hearing, received evidence, and considered facts and arguments, and since only factual averments are material, it is our view that to plead a cause of action in such a case as is attempted to be stated in the fifth cause of action, the plaintiff must either attach to the complaint a complete transcript of all the evidence upon which the authority acted (which in this case presumptively would include, among other things, a report of an ''investigation and study of the feasibility of financing and constructing . . . a toll bridge or other toll highway crossing between the County of Marin and the County of Contra Costa . . . and . . . whether such a bridge or other toll highway crossing is feasible and is for the best interests of the public highways,'' as impliedly called for in the Budget Act of 1950 [Stats. 1950, p. 255, Item 245.1, p. 311], a report on an application by the State of California for a Department of Army permit for the construction of the proposed bridge, and a report on the expenditure of $750,000 or so much thereof as may have been found necessary, and the surveys, plans, etc.,

for which such fund was appropriated, all as impliedly called for or authorized by an act of the Legislature [Stats. 1951, ch. 1473, p. 3451]) or, at the minimum, must allege the substance of all of the evidence which the authority did receive and further aver with particularity the elements, aspects and the principles wherein such evidence, considered in the light of the plaintiffs' contention, supports the conclusion that the authority abused the discretion vested in it. By no other means, since the averment of naked conclusions adds nothing, can the pleading show that the agency in a case such as this did in fact abuse its discretion.

To elucidate our holding still further, it means this: When it appears that an order made by the authority is within its jurisdiction and that in making such order the authority conducted a hearing, heard the interested parties, and has acted upon substantial evidence, we cannot draw the inference that it has abused its discretion unless at least the substance of the evidence upon which it acted is alleged. In the absence of the evidence an abuse of discretion cannot be shown by mere allegations of what the authority did not do or did not consider. It is what the authority did do upon the evidence which was before it which must be attacked if the attack is to prevail; only in the light of the evidence before it when it acted could its refusal to hear further evidence be shown to be erroneous or could the inference be drawn that it abused its discretion in not doing something other than what it did do.

Tested by the standards which we have explained it appears that the complaint in its fifth cause of action shows no more, in any material sense, than that the authority at a hearing on a matter within its jurisdiction, accorded the plaintiffs less time than they wanted for presentation of their views, and less time than was devoted to hearing opposing views, and upon the evidence before it, the substance of which we do not know, came to a conclusion adverse to the views of plaintiffs, but a conclusion within its statutory power to reach. Thus there is no basis for concluding that the authority abused its discretion in failing to make further studies or consider further other types of crossings.

Plaintiffs have not, either in this court or in the trial court, requested leave to amend (such request, we recognize, is not necessary for certain purposes, Code Civ. Proc., § 472c), or suggested that any amendment materially affecting any of their alleged causes of action could be added, and no claim is

made that the authority acted arbitrarily or abused its discretion otherwise than in the particulars alleged in the complaint. Furthermore, it is not claimed that the evidence which was before the authority (the substance of which, as already mentioned, we do not know, but which must be presumed to have included the engineering surveys and reports on feasibility and desirability of the proposed type and location of bridge as hereinabove mentioned) would, if the substance thereof were fully alleged, show that the authority actually had before it no engineering studies and no feasibility or desirability reports, or would show that no consideration was given to the question as to what type of crossing would be most feasible and the construction of which would best serve the interests of the people in the extension and maintenance of the state's highways, or that the authority's determinations and actions are as a matter of law without substantial evidentiary support.

Pertinent also to the plaintiffs' lack of desire (if not definite unwillingness) to include in their pleadings all of the evidentiary matters which were before the authority, the record on appeal shows that at the hearings on the demurrer the *defendants* produced, had marked for identification, and asked the trial court to take judicial notice of, the following documents: (1) the report of the Department of Public Works on the proposed highway toll crossing; (2) reporter's transcript of the authority's meeting of September 23, 1952; (3) reporter's transcript of the authority's meeting of September 26, 1952. The record further shows that the trial court in its memorandum opinion stated, among other things, that "The court has not taken notice of the reporter's transcript of the meetings of the Toll Bridge Authority of September 23rd, 1952 and September 26th, 1952, or of the report of Ralph A. Tudor, Special Engineer Consultant, to the . . . Director of Public Works of California, dated January 2, 1951, which were marked for identification, and of which defendants urged that the court should take judicial notice."

Plaintiffs in their memorandum of points and authorities (filed with their complaint) further disclose the limited extent of their theory of attack in relation to asserted abuse of discretion. It is not that the authority made *no* study or investigation of an earth fill type of crossing, but that, in plaintiff's own language, "the Authority has made no *adequate* study and investigation of the earth fill type of crossing as compared with the Bridge and that such constitutes an abuse

·of discretion.'' (Italics added.) They further assert in such memorandum that they are "prepared to show on the trial of the merits . . . that the record of the hearings before the Authority contains no evidence as to the costs of insurance, physical operation and maintenance of an earth fill crossing as compared with the Bridge or the comparable durability of the two structures in the face of earthquakes, bombing attacks or the comparable ease of widening the structures to meet future traffic needs of the San Francisco Bay Area. In addition, the record of the hearings . . . contains no evidence that the Authority studied the need for rail transportation both for rapid transit facilities and for freight and other passenger service in the Bay Area. . . . The record shows that no original investigation or determination was made by the Authority or its agents as to the costs of an earth fill crossing. . . . the record will show that no study was made of the question whether such a Bridge would interfere with future water conservation facilities in the North Bay Area. . . . The record will show . . . that detailed and thorough studies of seven different steel Bridges were made. All were similar structurally but differed in location only. The record will show that neither the Authority nor its agents ever made an original drawing or thought of an original plan for an earth fill crossing. Nor was any study of different methods to construct such an earth fill crossing ever undertaken. It would seem that the only reasonable way to plan a structure of such proportions and cost as a bridge across the bay is for the Authority to study and investigate thoroughly various possible types of structures as well as various locations for each type of structure. The record will show that the Authority has acted arbitrarily and unreasonably in deciding to build the Bridge without adequately investigating an earth fill type crossing.''

Again we note the emphasis on plaintiffs' theory in the sentence last above quoted, "The record will show that the Authority has acted arbitrarily and unreasonably in deciding to build the Bridge without *adequately* investigating an earth fill type crossing.'' (Italics added.)

It is our conclusion that the plaintiffs' arguments as above set forth, like the averments in their fifth cause of action, relate at most to the wisdom of defendants' acts, and that on any tenable view of the law plaintiffs fall short of showing either that the complaint alleges or could be amended to allege facts from which a court could draw the conclusion that the

authority had abused the discretion delegated to it by law. Accordingly we must conclude that the complaint, in its fifth cause of action, as well as in the others already discussed, is vulnerable to the demurrer and that the trial court's order sustaining such demurrer was correct.

For the reasons above stated, the judgment is affirmed. Pursuant to stipulation of the parties, let the remittitur issue forthwith.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.