[Civ. No. 48635. First Dist., Div. Four. Dec. 4, 1980.]

WOMEN ORGANIZED FOR EMPLOYMENT et al.,
Plaintiffs and Appellants, v.
ALAN L. STEIN, as Secretary, etc., et al.,
Defendants and Respondents.

COUNSEL

Angela Glover Blackwell, Robert L. Gnaizda, Susan R. Hershman, Lois Salisbury, Oliver Jones and Eduardo Sandoval for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Tyler B. Pon and Randall P. Borcherding, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**RATTIGAN, Acting P. J.**—Appellants include nine organizations and Kathleen Connolly, an individual. They petitioned the superior court for a writ of mandate which would require respondent state officers to collect specified data from certain entities transacting the business of insurance in California. The court sustained general demurrers to the petition, without leave to amend, and entered a judgment dismissing appellants' action. They appeal from the judgment.

In light of the procedural sequence described, the only question on the appeal is whether the petition states a cause of action. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal. Rptr. 541, 528 P.2d 357].) In assessing its sufficiency for that purpose, we must treat the demurrers as admitting all material facts properly pleaded but not contentions, deductions, or conclusions of fact or law. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241]; *Tinsley* v. *Palo Alto Unified Sch. Dist.* (1979) 91 Cal. App.3d 871, 889 [154 Cal.Rptr. 591].) The latter qualification means that the demurrers did not admit the truth of various argumentative passages in the petition relative to "abuses" and failures of regulation claimed or assumed to exist in the California insurance industry. (Cf. *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659]; *Bell* v. *City of Mountain View* (1977) 66 Cal.App.3d 332, 342 [136 Cal.Rptr. 8].) We nevertheless include some of these passages in our summary of the petition to provide a context.

The pleading is entitled "Petition For Remedial Writ Of Mandate." The respondents named in it are the "Secretary of Business and Transportation," the "Commissioner of Insurance," and the "Commissioner of Real Estate." Appellants allege or assert in it as follows:

"This mandamus government accountability action seeks to compel respondents" to "[a]dhere to their legislative mandate to protect the public"; to "[c]ease abdication of responsibility to supervise the State insurance industry, its multi-billion real estate actions [*sic*], and its anti-trust and civil rights violations"; and to "[c]ease governmental 'benign neglect' of housing and insurance consumers."[1]

It is alleged that "[i]ndividual petitioner Kathleen Connolly sues as a citizen, resident, and taxpayer of the State of California, with a substantial interest in the question of public interest presented in this case"; as "a female purchaser of insurance and housing"; and as "the Director of petitioner Women Organized For Employment." The so-called "[o]rganizational petitioners" are collectively described as "a broad coalition of consumer, minority, and womens' [*sic*] organizations" which are "non-profit California corporations or associations... substantially interested in the question of public interest presented...."

Appellants allege that the "action is also brought as a representative action on behalf of the members of said organizations," the majority of whom would "benefit from enforcement" of specified statutory provisions "against... practices of the California insurance industry" which assertedly include discrimination on the basis of race, sex, and wealth in the establishment of insurance rates, underwriting, selling, employment, and mortgage lending; and "conflicts of interest among insurance ... corporations' Boards of Directors via interlocking directorates which stifle competition and increase the cost of insurance."

The petition continues: "Additionally, the insurance industry's vast real property ownership in California supports multi-billion dollar profits [which have] not been recorded by any of respondents" and which have been enhanced by an excessive "estimated Proposition 13 annual tax saving to the California insurance industry."[2] These profits "should

---

[1] These passages of the petition are footnoted with a statement that "[a]ll insurance industry practices set forth herein are based on information and belief." The passages are among those which are not deemed admitted by the demurrers in any event. (*Faulkner* v. *Cal. Toll Bridge Authority, supra*, 40 Cal.2d 317 at p. 329; *Bell* v. *City of Mountain View, supra*, 66 Cal.App.3d 332 at p. 342.)

[2] The term "Proposition 13 annual tax saving" is not explained in the petition or in appellants' briefs. We may reliably assume that it refers to yearly reductions in property taxes resulting from the initiative measure (Prop. 13) by which the voters added article XIII A to the California Constitution at the June 1978 primary election. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Board of Equalization* (1978) 22 Cal.3d 208, 218 [149 Cal.Rptr. 239, 583 P.2d 1281].)

be rebated to consumers" pursuant to statute. "This petition merely seeks to compel these officials [respondents] to... *gather the minimum data necessary* for proper future industry regulation." (Original italics.) Appellants have repeatedly requested that respondents do this, but their requests have been refused.

It is further alleged in the petition—and argued at length—that respondents have a duty to collect the desired "data" by reason of specified statutory provisions discussed later in this opinion. In their prayer, appellants request a writ of mandate commanding respondents "to jointly present" to the superior court, within 60 days, "a plan for the gathering of the... data in the most expeditious manner possible."[3]

### *Review*

Appellants' contend that their petition states a cause of action pursuant to Code of Civil Procedure section 1085. ■ That statute provides a remedy in mandamus "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station....." The remedy is distinctively called "traditional mandamus." (Cal. Civil Writs (Cont.Ed.Bar 1970) § 5.1, pp. 62-63.) It will lie to compel action by a person only if he has a clear, present and "usually ministerial" duty to take the action. (*Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 813 [25 Cal.Rptr. 798] [citing *Faulkner* v. *Cal. Toll Bridge Authority, supra,* 40 Cal.2d 317 at p. 326]; *Reinbold* v. *City of Santa Monica* (1976) 63 Cal.App.3d 433, 438 [133 Cal.Rptr. 874].)

Recognizing this limitation on the remedy, appellants broadly contend that the "one issue to be heard on this appeal" is whether each

---

[3]The prayer refers the reader to an exhibit which is attached ·to the petition. With some nonsubstantive editing by this court, the exhibit reads:

"Collection of the following data is sought:

"For each insurance company conducting an annual average of one million dollars or more in business in California for the past five years, or employing an annual average of 100 or more persons in California for the past five years:

"(i) The race (or ethnic background) and sex of each of its employees, by management categories and other major employment categories,

"(ii) The race (or ethnic background), sex, and possible conflicts of interest of all the members of its Board of Directors (if a corporation) or partners (if a partnership) (including participation in interlocking directorates),

"(iii) A description of the nature and precise location of all interests in real property owned by the company, including security interests (loans) (location description should include zoning and racial composition of the neighborhood and average fair market value of an acre of land in the neighborhood),

"(iv) The company's annual real property tax savings pursuant to Proposition 13 from fiscal 1978-1979 to fiscal 1989-1990." (See fn. 2, *ante.*)

respondent has "shirked a mandatory duty" by not collecting the "data" addressed in their petition. (See fn. 3, *ante.*) The specific question is whether the asserted "duty" is imposed on any of the respondents by law. Appellants contend that it is imposed on respondent Real Estate Commissioner by Business and Professions Code section 10055; on respondent Insurance Commissioner by sections 790.04, 790.05, 790.06, 790.10, and 1852 of the Insurance Code; and on respondent Secretary of the Business and Transportation Agency by section 13979 of the Government Code.[4]

It is not feasible to quote these statutes in full because of their number and length. It is also unnecessary. ■ As to respondent Real Estate Commissioner, Business and Professions Code section 10055 must be read in context with sections 10050 and 10054 of the same code. Section 10050 identifies him as the "chief officer" of the Department of Real Estate. It also provides that his "principal responsibility" is the enforcement of the Real Estate Law regulating licensees of the department (Bus. & Prof. Code, § 10000 et seq.) and of the law regulating real estate transactions (*id.*, § 11000 et seq.) "in a manner which achieves the maximum protection for the purchasers of real property and those persons dealing with real estate licensees."

Section 10054 provides that the Real Estate Commissioner "shall" appoint "a Real Estate Advisory Commission." Trailing in this context, section 10055 provides in pertinent part that he "shall" meet with the Real Estate Advisory Commission "on the functions and policies of the [D]epartment [of Real Estate] and how it may best serve the people of the state and recognize the legitimate needs of the industry which it regulates and the licensees of the department."

Appellants paraphrase the language of section 10055 as providing that the Real Estate Commissioner "must 'develop functions and policies of...his department' to 'best serve the people of the state....'" (We here quote their opening brief verbatim.) On this basis, they argue that he has a mandatory duty to collect the "data" in question from the insurance industry sources addressed in this proceeding. The paraphrasing is an unwarranted departure from the plain meaning of section 10055 and its statutory context cited above. The argument is an unsupported assumption that the Real Estate Commissioner has any duty

---

[4]This sentence correctly entitles the state officers respectively sued by appellants as the "Commissioner of Real Estate," the "Commissioner of Insurance," and the "Secretary of Business and Transportation." (See Bus. & Prof. Code, § 10050; Ins. Code, § 20 and § 12900 et seq.; Gov. Code, § 13976.)

—mandatory or ministerial—to collect the desired "data" from sources engaged in a business which is not within his regulatory authority at all. (See fn. 3, *ante.*) He obviously has no such duty. (See Bus. & Prof. Code, §§ 10000 et seq., 11000 et seq.) Appellants have accordingly stated no cause of action in mandamus against him. (Code Civ. Proc., § 1085.)

■ As to respondent Insurance Commissioner, section 790.04 provides that he "shall have power to examine and investigate into the affairs of every person" in the business of insurance "to determine whether such person has been or is engaged" in certain practices proscribed in section 790.03.[5] Section 790.05 provides that he "shall" charge a person, and order a hearing, when he has "reason to believe" that the person is so engaged; and that he "shall" order the person to "cease and desist" if the "charges or any of them are found to be justified" in the proceeding. Section 790.06 provides that he "may" initiate a similar proceeding against a person in the insurance business if he has "reason to believe" the person has been or is engaged in "unfair" practices "not defined in Section 790.03" *and* that the proceeding would be "in the interest of the public."

Section 790.10 provides in pertinent part that the Insurance Commissioner "shall . . . promulgate reasonable rules and regulations . . . as are necessary to administer" the provisions which precede it. Section 1852 provides in effect that he "shall" take an insurer's "expenses" into consideration in discharging his statutory duty to determine whether the rates it charges for insurance are "excessive." (See § 1850; § 1852, subds. (a), (b), (c).)

As to respondent Secretary of the Business and Transportation Agency (hereinafter Secretary), Government Code section 13979 provides in general terms that he "shall" advise the Governor on various "programs to accomplish comprehensive, long-range, coordinated planning and policy formulation in the matters of public interest related to the agency."

Respondents Insurance Commissioner and Secretary are thus charged by the respectively cited statutes with the performance of "duties" which may be described as "mandatory," particularly where it is provided that specified action "shall" be taken. (See Ins. Code, § 16; Gov. Code, § 14; *Governing Board* v. *Felt* (1976) 55 Cal.App.3d 156,

---

[5]Statutory citations are to the Insurance Code until next indicated otherwise.

161-163 [127 Cal.Rptr. 381].) The "duties" are nevertheless defined in the broadest of terms, and the Legislature has not specified any procedures to be employed in their performance. The Legislature's silence as to *method* necessarily imports that each of these officers is invested with *discretion* in selecting and taking administrative action pursuant to the statutes reaching him. (*People* ex rel. *Fund American Companies* v. *California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623].)

Appellants have not alleged in their petition that either of these two respondents has failed to perform the duties explicitly exacted of him by any of the various statutes cited: the objective of the petition is to compel each to perform them in a particular way by collecting the "data" desired. The remedy of "traditional mandamus" provided by Code of Civil Procedure section 1085 will not lie to control the *manner* in which an administrative officer is to exercise discretion lawfully entrusted to him. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Faulkner* v. *Cal. Toll Bridge Authority, supra,* 40 Cal.2d 317 at p. 326; Cal. Civil Writs, *op. cit. supra,* § 5.26, pp. 80-81; see, generally, *Clunie* v. *Siebe* (1896) 112 Cal. 593, 597-598 [44 P. 1064].) The trial court correctly determined that the petition does not state a cause of action for the relief prayed in this regard.

A passage in appellants' reply brief suggests that they are charging respondent Insurance Commissioner at least, with having *abused* his discretion by arbitrarily failing to collect the "data" in question. No authority is cited for the suggestion, it is raised in the reply brief for the first time, and no cause is shown for the failure to raise it earlier. Perceiving no merit in it, we decline to consider it. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 425 [p. 4391], 442 [pp. 4405-4406].)

The judgment of dismissal is affirmed.

Poché, J., and Koford, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.