185 Cal.App.3d 616 (1986)
230 Cal. Rptr. 42
RICHARD SKLAR et al., Plaintiffs and Appellants,
v.
FRANCHISE TAX BOARD, Defendant and Respondent.
Docket No. A032762.
Court of Appeals of California, First District, Division Four.
September 17, 1986.
*617 COUNSEL
Robert L. Gnaizda, Sidney M. Wolinsky and James R. Wheaton for Plaintiffs and Appellants.
John K. Van de Kamp, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Respondent.
*618 OPINION
SABRAW, J.
Today we consider whether taxpayers can obtain mandamus to compel the State Franchise Tax Board (Board) to adopt certain specific procedures to control the use of alcohol entertainment expense as a business deduction on state income tax returns. We conclude that mandamus will not lie to direct the manner in which the Board shall exercise its delegated authority to administer the state income tax laws.
Plaintiffs alleged in their amended petition that they are citizens and taxpayers of various counties in Northern California who commenced this action "individually and on behalf of all taxpayers of the State of California" for the purpose of compelling the Board "to collect income taxes lawfully due the State that have eluded collection because of the Board's total failure to enforce provisions of the tax statutes." Relying on various statutes (e.g., Health & Saf. Code, §§ 11760.2 & 11760.4), plaintiffs asserted that "it is the clearly defined, articulated policy of the State to promote temperance in the use and consumption of alcoholic beverages." The Board, as an agency of the state, has an important and "affirmative role in alleviating problems related to the inappropriate use of alcoholic beverages." Contrarywise, "there is no declared policy of the State to promote the purchase, consumption or use of alcoholic beverages."
According to plaintiffs, "owners, officers, partners, executives and professionals in corporations and other business organizations consume substantially all the alcohol purchased by corporations, or other business organizations, or individuals, that is subsequently deducted from state income taxes.... Said persons would reduce their consumption of alcohol if it could not be deducted on state income tax returns."[1] "In excess of $1,500,000,000 is annually spent in California by corporations, partnerships, unincorporated associations and other business organizations, and individuals for alcohol. Such expenditures are deducted as having a business purpose under the California income tax laws.... Said deductions reduce state collections" by approximately $216 million per year in plaintiffs' estimation.[2]
*619 Citing Revenue and Taxation Code sections 17201, 24343, and 24444,[3] plaintiffs alleged: "Alcohol is deductible on income tax returns only if it is both an `ordinary' and `necessary' business expense. Alcohol is neither an ordinary nor necessary business expense, because its effects are deleterious and adverse to the conduct of business" in that it "impairs business and professional judgment and befuddles the mind, reducing mental acuity, productivity and job performance." "These effects mandate treating alcohol as unnecessary to the conduct of business, except where exceptional circumstances are documented and substantiated by the taxpayer as a prerequisite to claiming the deduction." (Emphasis in original.) Even where expenses are "ordinary" and "necessary," they are not deductible if they are either "personal, living, or family expenses" or if "generally considered to constitute entertainment, amusement or recreation." "Except in rare circumstances, alcohol consumption is a personal, living or family expense" and "generally considered to be entertainment, amusement or recreation." In plaintiffs' view, to qualify for deduction, "the expense must be directly related to or associated with the active conduct of business, not merely `ordinary' and `necessary.' The connection must be affirmatively established by the taxpayer. In addition, the taxpayer must substantiate with documentary evidence the amount of the expense, the time and place, the business purpose served thereby and the business relationship to the person entertained."
The Board "is aware that substantially all deductions taken for drinking expenses are either not ordinary business expenses, or are unnecessary for the conduct of business, or are personal and entertainment expenses improperly deducted, or are not directly connected to the active conduct of business, or cannot be adequately documented or substantiated." In spite of having a "mandatory duty to administer and enforce the income tax laws," the Board "has taken no action of any kind specifically in regard to taxpayers' unlawful deductions of drinking expenses." Plaintiffs specifically mentioned the Board's failure to "(a) require any form or schedule to identify individual taxpayers' deductions of drinking expenses; (b) enforce the statutory presumptions against deductions of drinking expenses, and disallow those drinking expenses that cannot be deducted; (c) require any documentation or substantiation of drinking expenses at the time said expenses are deducted; (d) audit or investigate returns specifically for taxpayers who deduct drinking expenses; (e) promulgate any rules or regulations which define the bounds of when drinking expenses are both ordinary and necessary to the conduct of business; and; (f) carry out the duty and role it shares with other state agencies to alleviate the problems related to inappropriate alcohol use."
*620 Plaintiffs concluded by alleging that the Board's "inaction" amounts to "a policy of blanket affirmance of all deductions for drinking expenses" entailing "a waste of, and injury to, public funds ... that is harmful to the economic well-being of the State."
In the prayer of their amended petition plaintiffs sought the following relief:
"1. For a judgment declaring that:
"a. expenditures made by California taxpayers for alcoholic beverages are presumed to be non-deductible, and cannot reduce any taxpayer's gross income for the purpose of determining ... income tax owed;
"b. commencing with the first tax year (whether calendar or fiscal) following the entry of the final order of this Court, no such deductions will be allowed, unless the taxpayer supplies documentation of the expenditure indicating the precise circumstances of the expenditure, which substantiates the exclusively business-related nature of the claimed deduction.
"2. [For] a peremptory writ of mandate ... compelling respondent to:
"a. collect the statutory tax on all taxpayers' gross income, reduced by such deductions as are allowed by law, but not including any expenditures made for alcoholic beverages, unless such expenditures are supported by the required documentation;
"b. immediately create and provide to all California taxpayers a document substantially similar in form and content to Appendix G[[4]] ... for use in the first tax year (whether calendar or fiscal) following the entry of a final order of this Court, so that taxpayers will provide to respondent all necessary information regarding the amount and justification of deductions for alcoholic beverage expenditures;
"c. immediately commence such administrative action as is necessary to prescribe such rules or regulations as are necessary to carry out the writ...."
*621 The Board's general demurrers to the amended petition were sustained by the trial court, which granted plaintiffs leave to amend. Plaintiffs elected to stand on their complaint, whereupon a judgment dismissing it was entered. This timely appeal followed.
(1a) We review the judgment according to familiar rules, with the goal of determining whether plaintiffs' amended petition suffices to state a cause of action for mandamus.[5] (Glaire v. La Lanne-Paris Health Spa, Inc. (1974) 12 Cal.3d 915, 918 [117 Cal. Rptr. 541, 528 P.2d 357]; Surina v. Lucey (1985) 168 Cal. App.3d 539, 541 [214 Cal. Rptr. 509]; Curran v. Mount Diablo Council of the Boy Scouts (1983) 147 Cal. App.3d 712, 719 [195 Cal. Rptr. 325, 38 A.L.R.4th 607].) (2) The Board's demurrer is treated as admitting all facts properly alleged in the petition, but not contentions, deductions, or conclusions of either fact or law. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal. Rptr. 718, 703 P.2d 58]; Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 572 [108 Cal. Rptr. 480, 510 P.2d 1032]; Serrano v. Priest (1971) 5 Cal.3d 584, 591 [96 Cal. Rptr. 601, 487 P.2d 1241].) The latter qualification means that the Board's demurrer did not admit the truth of various argumentative allegations relative to the legal construction, operation, and effect of specified statutory provisions, as well as allegations that the Board is allowing "impermissible" and "improper" deductions and that such action is "arbitrary and capricious, contrary to law, and an abuse of discretion." (Faulkner v. Cal. Toll Bridge Authority (1953) 40 Cal.2d 317, 329 [253 P.2d 659]; Women Organized for Employment v. Stein (1980) 114 Cal. App.3d 133, 135 [170 Cal. Rptr. 176]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 337-338, pp. 389-392.) The conclusions plaintiffs draw from the appendices attached to their petition are likewise to be disregarded. (See Weitzenkorn v. Lesser (1953) 40 Cal.2d 778, 785-786 [256 P.2d 947]; Cohen v. Ratinoff (1983) 147 Cal. App.3d 321, 327 [195 Cal. Rptr. 84].) Because the Board's demurrer was not sustained without leave to amend, we do not follow the rule that "[a]lso taken as true are facts that may be implied or inferred from those expressly alleged." (Kiseskey v. Carpenter's Trust for So. California (1983) 144 Cal. App.3d 222, 228 [192 Cal. Rptr. 492]; see Terhell v. American Commonwealth Associates (1985) 172 Cal. App.3d 434, 438 [218 Cal. Rptr. 256]; Service Employees International Union v. Hollywood Park, Inc. (1983) 149 Cal. App.3d 745, 757 [197 Cal. Rptr. 316].) Instead, it must be presumed *622 that plaintiffs have stated their case as strongly as it can be stated, with the consequence that all ambiguities and uncertainties will be resolved against them. (Shapiro v. Wells Fargo Realty Advisors (1984) 152 Cal. App.3d 467, 474 [199 Cal. Rptr. 613]; Archibald v. Cinerama Hawaiian Hotels, Inc. (1977) 73 Cal. App.3d 152, 155-156 [140 Cal. Rptr. 599]; Priola v. Paulino (1977) 72 Cal. App.3d 380, 384 [140 Cal. Rptr. 186].)
(3) Issuance of mandamus is subject to well settled principles. The writ is available "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085.) It will lie to compel action by a public body or official only if there is a clear, present, and ministerial obligation to take the action. (Taylor v. Board of Trustees (1984) 36 Cal.3d 500, 507 [204 Cal. Rptr. 711, 683 P.2d 710]; United States Steel Corp. v. Franchise Tax Board (1983) 144 Cal. App.3d 473, 479 [192 Cal. Rptr. 677]; Women Organized for Employment v. Stein, supra, 114 Cal. App.3d 133, 137.) Conversely, the action commanded cannot invade the area of discretion with which an administrative agency is vested over a given subject matter. (State of California v. Superior Court (1974) 12 Cal.3d 237, 247 [115 Cal. Rptr. 497, 524 P.2d 1281]; People ex rel. Younger v. County of El Dorado (1971) 5 Cal.3d 480, 491 [96 Cal. Rptr. 553, 487 P.2d 1193]; Duff v. City of Gardena (1980) 108 Cal. App.3d 930, 935-936 [167 Cal. Rptr. 4].) Between these opposing standards is the rule that "`[w]hile ordinarily, mandamus may not be available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner, or to reach a particular result, it does lie to command the exercise of discretion  to compel some action upon the subject involved.'" (Ballard v. Anderson (1971) 4 Cal.3d 873, 885 [95 Cal. Rptr. 1, 484 P.2d 1345] [citing and quoting Hollman v. Warren (1948) 32 Cal.2d 351, 355 (196 P.2d 562)]; accord In re Veterans' Industries, Inc. (1970) 8 Cal. App.3d 902, 926 [88 Cal. Rptr. 303]; Knoff v. City etc. of San Francisco (1969) 1 Cal. App.3d 184, 197 [81 Cal. Rptr. 683].)
(1b) Precisely where along this spectrum plaintiffs' petition falls is hotly disputed. Plaintiffs contend that the Board has a ministerial duty to enforce the tax laws in such a manner as will maximize revenues, and that the Board refuses to perform this duty. The Board argues that the ways in which it enforces the tax laws is discretionary and therefore beyond the reach of mandamus. Plaintiffs respond that the Board does not have the power to refuse to exercise its discretion and thereby "ignore massive tax fraud."
(4) California's income tax is divided into two parts, the Personal Income Tax Law (pt. 10 of div. 2, commencing with § 17001) and the Bank and Corporation Tax Law (pt. 11 of div. 2, commencing with § 23001). Statutes within the former scheme specify that the Board "shall administer and *623 enforce this part" (§ 19251) and "shall prescribe all rules and regulations necessary for the enforcement of this part." (§ 19253.) Concerning the latter, section 26422 reads in relevant part: "The ... Board shall have the power and it shall be its duty to administer this part. It shall prescribe all such rules and regulations as are necessary and reasonable to carry out the provisions of this part...." (Cf. § 23004.) The construction and meaning to be attributed to these provisions requires an examination of our decision in Women Organized for Employment v. Stein, supra, 114 Cal. App.3d 133.
The petitioners in Stein sought mandamus to compel the Commissioner of Insurance and others to collect certain data alleged to be necessary for proper regulation of the insurance industry. The trial court sustained demurrers without leave to amend and dismissed the petition. On the ensuing appeal this court reviewed the effect of various statutes, one of which provided that the commissioner "`shall ... promulgate reasonable rules and regulations ... as are necessary to administer'" his duties. We concluded that the commissioner was "thus charged by the respectively cited statutes with the performance of `duties' which may be described as `mandatory,' particularly where it is provided that specified action `shall' be taken." (Women Organized for Employment v. Stein, supra, 114 Cal. App.3d 133, 139.) We went on to hold: "The `duties' are nevertheless defined in the broadest of terms, and the Legislature has not specified any procedures to be employed in their performance. The Legislature's silence as to method necessarily imports that each of these officers is vested with discretion in selecting and taking administrative action pursuant to the statutes reaching him." (Id., at p. 140 [italics in original].)
This reasoning is highly pertinent for present purposes. As with the Commissioner of Insurance in Stein, the Board's statutory duty may be treated as mandatory (see § 16), but it is broadly defined, i.e., to "enforce" and "administer" the income tax powers of the state. To these ends, the Board is given the power to prescribe such "rules and regulations" as are "necessary" and "reasonable." These terms embody concepts that are flexible and relative, deriving substance from context and application. A rule deemed "necessary" for achieving a particular result may work in one setting but not in another. A regulation that is considered "reasonable" for one subject can lose this status if transferred to a different area. The differentiation between "necessary" and "unnecessary," between "reasonable" and "unreasonable," requires the exercise of discretion. Sections 19253 and 26422 make it clear that, with regard to the prescribing of rules and regulations affecting the income tax laws, such discretion resides in the Board, and only in the Board.
*624 (1c) No less important a consideration is the field in which this discretion is exercised. There is no room for disputing that actions by the Board concerning the formulation and promulgation of regulations are taken by it in its legislative capacity. (See Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 169-169 [188 Cal. Rptr. 104, 655 P.2d 306]; Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal. Rptr. 805, 520 P.2d 29]; Davies v. Contractors' State License Bd. (1978) 79 Cal. App.3d 940, 945-946 [145 Cal. Rptr. 284].) It is now settled that merely labelling an act as "legislative" does not immunize it from mandamus, especially if the act is completed. (See Candid Enterprises, Inc. v. Grossmont Union High School Dist. (1985) 39 Cal.3d 878, 885, fn. 3 [218 Cal. Rptr. 303, 705 P.2d 876]; Glendale City Employees' Assn., Inc. v. City of Glendale (1975) 15 Cal.3d 328, 343-345 [124 Cal. Rptr. 513, 540 P.2d 609]; Cal. Civil Writs (Cont.Ed.Bar. Supp. 1985) §§ 5.7 [p. 35], 5.26 [p. 45].) But judicial power relative to legislative acts is severely circumscribed.
Ten years ago the Supreme Court took note of "the well-established principle, rooted in the doctrine of separation of powers (Cal. Const., art. III, § 3), that the courts may not order the Legislature or its members to enact or not to enact, or the Governor to sign or not to sign, specific legislation." (Serrano v. Priest (1976) 18 Cal.3d 728, 751 [135 Cal. Rptr. 345, 557 P.2d 929] [fns. omitted].) The court has more recently stated "that by virtue of the separation of powers doctrine courts lack the power to order the Legislature to pass a prescribed legislative act." (Mandel v. Myers (1981) 29 Cal.3d 531, 551, fn. 9 [174 Cal. Rptr. 841, 629 P.2d 935].) Respect for this fundamental constitutional principle has given rise to the rule that "[m]andamus will not lie to compel a legislative body to perform legislative acts in a particular manner." (Board of Supervisors v. California Highway Commission (1976) 57 Cal. App.3d 952, 961 [129 Cal. Rptr. 504]; accord, e.g., Eller Outdoor Advertising Co. v. Board of Supervisors (1979) 89 Cal. App.3d 76, 82-83 [152 Cal. Rptr. 358]; Hicks v. Board of Supervisors (1977) 69 Cal. App.3d 228, 235 [138 Cal. Rptr. 101]; Bowles v. Antonetti (1966) 241 Cal. App.2d 283, 286-287 [50 Cal. Rptr. 370]; Monarch Cablevision, Inc. v. City Council (1966) 239 Cal. App.2d 206, 211 [48 Cal. Rptr. 550]; Johanson v. City Council (1963) 222 Cal. App.2d 68, 72 [34 Cal. Rptr. 798].) Were it otherwise, courts would be involved in "an attempt to exercise legislative functions, which ... is expressly forbidden...." (French v. Senate (1905) 146 Cal. 604, 607 [80 P. 1031].) "It is elementary that the courts have no such power." (Tandy v. City of Oakland (1962) 208 Cal. App.2d 609, 611 [25 Cal. Rptr. 429]; accord Hilton v. Board of Supervisors (1970) 7 Cal. App.3d 708, 714 [86 Cal. Rptr. 754].)
This attitude is especially evident and pronounced in situations where mandamus is sought to overcome legislative inaction. In Myers v. English *625 (1858) 9 Cal. 341, the issue was whether mandamus would issue to compel the State Treasurer to make disbursements for judicial salaries in the absence of an appropriation by the Legislature. The Supreme Court, concluding that it would not, stated: "It is within the legitimate power of the judiciary, to declare the action of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of non-action. The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the [Legislature].... We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one." (Id., at p. 349 [italics in original]; see California State Employees' Assn. v. State of California (1973) 32 Cal. App.3d 103, 109 [108 Cal. Rptr. 60].)
It may be conceded for purposes of argument that the Board has a mandatory duty to prescribe rules and regulations (see §§ 16, 19253, 26422; Women Organized for Employment v. Stein, supra, 114 Cal. App.3d 133, 139) and that it has not done so with regard to the deductibility of alcohol-related expenditures. Notwithstanding our previous discussion as to the difficulties entailed in the discretionary exercise of this power, the Board's failure to make any regulations might appear to present an appropriate instance to apply the rule mentioned above that mandamus would not lie because the Board would in effect have been ordered to exercise its discretion in a particular manner in order to reach a particular result. (State of California v. Superior Court, supra, 12 Cal.3d 237, 247; Hollman v. Warren, supra, 32 Cal.2d 351, 355; Women Organized for Employment v. Stein, supra, 114 Cal. App.3d 133, 140.)[6] Further, because the trial court lacked jurisdiction to order such action by the Board (Johanson v. City Council, supra, 222 Cal. App.2d 68 at p. 72), plaintiffs failed to state a cause of action in mandamus.
It is true, as plaintiffs contend, that "mandamus will lie to correct an abuse ... occurring by virtue of a failure to exercise discretion." (Betancourt v. Workmen's Comp. App. Bd. (1971) 16 Cal. App.3d 408, 413 [94 Cal. Rptr. 9].) An examination of this contention establishes that it is a *626 recasting of plaintiffs' claim that the Board has a ministerial duty to exercise its rule-making function. As has been shown, however, the Board's inaction implicates a sensitive area of legislative discretion. In light of the circumstances detailed in the preceding discussion, plaintiffs have not demonstrated that the Board's inaction in not prescribing regulations embodying the precise substance and content plaintiffs desire amounts to abuse.
In its order sustaining the Board's demurrer, the trial court called plaintiffs' goal "laudable" but concluded that no cause of action had been stated against the Board for the reason that "A writ [of mandamus] will not issue to compel performance of a discretionary act in a particular manner." We agree with both aspects of this ruling. The promiscuous use of alcohol causes incalculable waste, damage, and torment to society and individuals alike. It is also responsible for what Justice Clark once described as "the carnage on our highways." (Taylor v. Superior Court (1979) 24 Cal.3d 890, 901 [157 Cal. Rptr. 693, 598 P.2d 854] (dis. opn. of Clark, J.).) The Legislature and the courts have undertaken numerous and varied efforts to reduce the consequences of alcohol abuse. (See e.g., Pen. Code, § 192, subds. (c)(3) and (c)(4); Veh. Code, §§ 23152, 23153; Burg v. Municipal Court (1983) 35 Cal.3d 257 [198 Cal. Rptr. 145, 673 P.2d 732]; People v. Albright (1985) 173 Cal. App.3d 883 [219 Cal. Rptr. 334]; but cf. Civ. Code, § 1714, subd. (b).) However worthy and commendable their goal, what plaintiffs fail to appreciate is that the trial court lacked the authority to order implementation of the means sought by plaintiffs. The trial court correctly sustained the Board's demurrer to their amended petition.
The judgment of dismissal is affirmed.
Poche, Acting P.J., and Channell, J., concurred.
NOTES
[1] Plaintiff purported to substantiate these allegations by use of a number of articles published in scholarly journals. Copies of these articles, together with synopses prepared by plaintiffs, were attached as appendices to plaintiffs' petition and incorporated therein by reference.
[2] Plaintiffs' figures are explained in another appendix also incorporated by reference. On the basis of information allegedly derived from the 1983 "Annual Statistical Review" prepared by the Distilled Spirits Council of the United States, plaintiffs alleged in effect that the annual average expenditure by businesses in the United States is $8,207,866,004. Of this total, 18.34 percent, or $1,505,357,607, is attributable to "business purchases" in California. Using a "tax rate" of 9.6 percent for business entities (see Rev. & Tax. Code, § 23151) and 11 percent for individuals (see id., § 17041), plaintiffs calculate that "the total lost revenue to the State attributable to corporate alcohol expenditures is $144,514,330" plus $72,257,165 for individuals.
[3] Statutory references are to the Revenue and Taxation Code unless otherwise indicated.
[4] "Appendix G" is a one-page form instructing the taxpayer that "to claim a deduction for expenditures for alcoholic beverages, you MUST provide information documenting that such is both an `ordinary' and `necessary' business expense, and relates to the conduct of your business." The form directs the taxpayer to specify the "Total Dollar Amount of Alcohol Purchases Deducted (Include drinks at home, with meals, and alcohol purchased by package.)" and to "Attach a detailed schedule documenting the business purpose of each of the above expenditures, including a. person(s) served b. location c. number of drinks d. dollar amount e. business purpose."
[5] Plaintiffs raise no argument in their briefs regarding their dismissed claim for declaratory relief. We therefore deem their appeal from that part of the judgment to be abandoned. (Trailer Train Co. v. State Bd. of Equalization (1986) 180 Cal. App.3d 565, 576, fn. 5 [225 Cal. Rptr. 717]; Connor v. Dart Transportation Service (1976) 65 Cal. App.3d 320, 323 [135 Cal. Rptr. 259].) Our analysis is consequently restricted to plaintiff's claim for mandamus, although we shall consider this claim in light of certain portions of the petition relative to the discarded claim for declaratory relief.
[6] Contrary to plaintiffs' strenuous arguments, our decision in Knoff v. City etc. of San Francisco, supra, 1 Cal. App.3d 184, does not call for a different result. Knoff involved a county assessor who had not complied with constitutional and statutory duties to fix an assessment rate and apply it uniformly, duties which we held were enforceable by mandamus. (Id., at pp. 195-197; see TRIM, Inc. v. County of Monterey (1978) 86 Cal. App.3d 539, 545-546 [150 Cal. Rptr. 351].) Knoff is distinguishable because it did not involve the coerced exercise of legislative discretion.