Filed 5/7/14  Reiter v. Sonoma County Sheriff's Dept. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| JOSEPH REITER,<br><br>        **Plaintiff and Appellant,**<br><br>v.<br><br>**SONOMA COUNTY SHERIFF'S DEPARTMENT et al.,**<br><br>        **Defendants and Respondents.** | **A137941**<br><br>(Sonoma County<br>Super. Ct. No. SCV-250631) |


Joseph Reiter appeals from a judgment dismissing his action against the Sonoma County Sheriff's Department (the Department) after the superior court sustained the Department's demurrer to Reiter's first amended complaint (FAC) without leave to amend.  Claiming to be a qualified patient under the Compassionate Use Act, Health and Safety Code section 11362.5 et seq. (CUA) and/or California's Medical Marijuana Program (MMP), Health and Safety Code section 11362.71,[1] Reiter sued the Department after its officers, armed with a valid search warrant, seized marijuana Reiter was cultivating.  The marijuana was later summarily destroyed pursuant to section 11479, the statute that is at the center of Reiter's appeal.

Reiter sought declaratory and injunctive relief based on a claimed as-applied violation of his due process rights under the California Constitution.  After the Department filed a demurrer to the FAC, Reiter took the unusual step of filing a "non-

_____

[1] All further undesignated statutory references are to the Health and Safety Code.

1

opposition to the demurrer" in which he largely admitted his claim was barred by existing California law. Reiter's nonopposition purported to preserve certain claims for appeal, however, and he now asks us to reverse the judgment. In this court, he contends the FAC either states or could be amended to state claims arising out of the violation of his rights to be free from unreasonable search and seizure and to due process, as well as an equitable claim for recovery of the value of the seized marijuana.

We reject all of Reiter's arguments save the last. Accordingly, we will reverse the judgment and remand to the trial court to permit Reiter the opportunity to amend his pleading to state a claim for recovery of the value of the allegedly lawfully possessed, but unlawfully seized, marijuana.

FACTUAL AND PROCEDURAL BACKGROUND

In ruling on the Department's demurrer, the trial court was required to accept as true all material facts properly pleaded in Reiter's first amended complaint. (*Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 216 (*Requa*).) We must do the same on appeal, and thus our statement of facts is taken from the material allegations of the FAC.[2] (*Ibid.*)

*Search, Seizure, and Destruction of the Marijuana*

Reiter is a citizen and taxpayer in Sonoma County. On or about August 29, 2008, officers of the Department executed a search warrant on property owned or occupied by Reiter. The affidavit in support of the warrant stated Reiter had been observed openly watering and tending to marijuana plants in the backyard of the property. The officers made no effort to speak with Reiter before obtaining the warrant, and they made no effort to determine whether his cultivation of marijuana was legal under the CUA or MMP.

---

[2] The FAC contains numerous allegations about what the relevant law is or should be. While we must accept as true all well-pleaded *factual* allegations, we disregard conclusions of law. (*Requa, supra,* 213 Cal.App.4th at p. 216; see *Faulkner v. Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 ["Allegations that the acts of a commission or board were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer."].)

Other than the observation of 119 growing plants in plain view, and Reiter's open cultivation of those plants, the search warrant included no information indicating Reiter was acting unlawfully. Nor did the warrant include facts suggesting Reiter might be armed and dangerous.

During the search of the property, four separate medical marijuana cards and/or doctor's recommendations for marijuana use were located, including a valid recommendation issued to Reiter. Under Sonoma County's guidelines for medical marijuana, persons who qualify under the MMP may cultivate 30 live marijuana plants.[3] Those guidelines would permit four qualified individuals to collectively and cooperatively cultivate up to 120 marijuana plants. During the search, the Department's officers located 119 growing marijuana plants, one less than the legal limit. Without making any effort to determine whether the plants were within the purview of the CUA and MMP, the officers uprooted and seized all the plants.

After the officers completed their search of the property from which the marijuana was seized, they went to Reiter's residence where they questioned Reiter's wife, who knew nothing about the cultivation and was unaware Reiter had a medical marijuana card or a medical need for marijuana. The officers found no evidence of marijuana sales, but they formed the opinion the seized marijuana had been cultivated unlawfully because they found no evidence of marijuana use.

Although the name and contact information of the issuing physicians was printed on the face of the marijuana cards found during the initial search, the officers did not attempt to contact the physicians to determine whether Reiter or the other cardholders had legitimate recommendations for the use of marijuana under the CUA or MMP. One

---

[3] We base our description of the county's guidelines solely on the allegations of the FAC. The record on appeal contains no copy of those guidelines, and we have not located them on our own. Although we could judicially notice the county's legislative enactments governing medical marijuana (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1077, fn. 5), in this court the parties have not sought judicial notice of the guidelines to which the FAC refers. We therefore take no position on whether the allegations accurately reflect the actual legislation.

of the officers did speak with Reiter's attorney immediately after the marijuana was seized and informed him Reiter was a suspect with whom the officers wished to speak concerning the marijuana. The officers also informed Reiter's wife, who passed the information along to Reiter. Reiter was thus fully aware that the marijuana had been seized and he was a criminal suspect.

Later on the day of the seizure, the officers summarily destroyed all but 10 pounds of the marijuana pursuant to section 11479.[4] This was done without notice to Reiter or his attorney, who had no opportunity to be heard before the destruction occurred. Both the Department's internal administrative directive and the superior court's order authorizing immediate destruction of the marijuana stated that destruction was required because the Department lacked adequate space to store the marijuana and because stored marijuana can be flammable. Reiter alleges that neither of these reasons is true and neither justifies the summary seizure and destruction of marijuana without some type of post-seizure notice and opportunity to be heard.

Reiter concedes the Department acted pursuant to a facially valid warrant and a duly issued order of the superior court. Such orders are issued pro forma in Sonoma County in cases of seizures of marijuana, and the superior court makes no inquiry to determine whether the marijuana is potentially subject to the CUA.

At the time of the destruction order at issue here, Reiter had not been arrested or charged with any offense related to the seized marijuana. He had no prior history of drug arrests, and no serious or felony convictions. There was no danger, urgency, or other law enforcement justification warranting the uprooting of the marijuana plants and the destruction of all but 10 pounds of the seized marijuana without giving Reiter notice and

---

[4] Section 11479 provides in relevant part that "at any time after seizure by a law enforcement agency of a suspected controlled substance, that amount in excess of 10 pounds in gross weight may be destroyed without a court order by the chief of the law enforcement agency or a designated subordinate." Destruction shall not take place until certain requirements are satisfied, including a determination by the chief of the law enforcement agency "that it is not reasonably possible to preserve the suspected controlled substance in place, or to remove [it] to another location." (§ 11479, subd. (d).)

4

an opportunity to be heard.  There was no increased danger Reiter might flee or alert co-conspirators if given notice, as he had already been told he was a suspect.

Reiter was later charged with felony cultivation of marijuana and felony possession with intent to sell.  (§§ 11358, 11359.)  He raised the CUA and MMP as an affirmative defense and asserted that the 119 plants seized fell within the Sonoma County guidelines for cultivating collectively and cooperatively under section 11362.775.  Reiter was initially held to answer following a preliminary hearing, but the prosecution later agreed to dismiss all charges.  The charges were dismissed in full in May 2011.

In the criminal case, Reiter did not move for return of the seized marijuana plants under the authority of *City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355 (*Garden Grove*)[5] "or any other available procedure for the return of the 119 marijuana plants originally seized[.]"  (See Pen. Code, §§ 1538.5, subd. (a)(1)(B) [motion for return of property seized under a warrant], 1540 [restoration of property seized without probable cause for issuance of warrant]; see also § 11473.5, subd. (a) [drug evidence seized by law enforcement may be destroyed "unless the court finds that the controlled substances . . . were lawfully possessed by the defendant"].)  All but 10 pounds of the marijuana were destroyed immediately following seizure, and without giving notice to Reiter, the Department destroyed the remaining 10 pounds prior to, or immediately following, dismissal of the charges against him.

Reiter filed a claim under the Government Claims Act (Gov. Code, §§ 900 et seq.) with the County of Sonoma seeking damages for the initial destruction of all but 10 pounds of the marijuana.  In his claim, he alleged the Department's actions were unconstitutional.  The county denied the claim.  Reiter did not file an action based on his damage claim "because he . . . concluded damages are barred based on qualified immunity[.]"  The FAC alleges that "[n]o viable damage claim can be asserted against

---

[5] *Garden Grove* held that a qualified patient under the CUA and MMP is entitled by due process principles to the return of seized medical marijuana once criminal charges against him have been dismissed.  (*Garden Grove, supra,* 157 Cal.App.4th at pp. 386-389.)

[the Department] in these circumstances." Furthermore, according to the FAC, it is unlikely a viable damage claim could be asserted in any similar case.

Reiter has a lawful right to cultivate and possess marijuana under the CUA and MMP. He would do so but for the Department's policies and practices which permit marijuana to be seized and destroyed without notice and opportunity to be heard and without recompense to the lawful cultivator or possessor because, Reiter alleges, the Department's actions are subject to qualified immunity from damage claims. Section 11479 expressly authorizes the Department to destroy all but 10 pounds of the marijuana seized by its officers. Neither that section nor the policies and practices of the Department and the Sonoma County Superior Court provide for notice and opportunity to be heard before the destruction of marijuana, regardless of whether the circumstances of the seizure have revealed evidence suggesting the marijuana might be lawfully cultivated and possessed under the CUA and MMP. Because of the threat of the application of the Department's policies to him, Reiter fears any marijuana he might lawfully cultivate or possess would be summarily seized without any opportunity to be heard in court prior to its destruction, and without any ability to obtain compensation from the Department or the county for the value of the marijuana.

*The Action Below*

Reiter filed this action on November 3, 2011. After a demurrer to his initial complaint was sustained with leave to amend, he filed the FAC on March 12, 2012. Reiter claimed to have taxpayer standing under Code of Civil Procedure section 526a[6] to enjoin the ongoing enforcement of section 11479 as applied to others, even if his individual claim is not actionable or moot. He asserted a single cause of action for

---

[6] Code of Civil Procedure section 526a provides in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the State, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

declaratory and injunctive relief based on an as-applied violation of the due process provisions of the California Constitution. (Cal. Const., art. I, § 7.)

Reiter claimed the Department's compliance with section 11479 and the terms of the superior court order authorizing destruction of the seized marijuana was insufficient to meet due process requirements. He asserted that before marijuana may be destroyed, there must be some form of notice and opportunity to be heard in the circumstances of his case. Reiter did not contend notice and opportunity to be heard were required *before* marijuana is seized and challenged only the procedure afforded *after* seizure of the marijuana, and then only when the seized marijuana is to be destroyed in whole or in part.[7]

Reiter alleged the Department would continue to enforce section 11479 and would continue to seize and destroy marijuana in excess of 10 pounds "without prior notice and opportunity to be heard in *any* circumstances; thereby leaving the party or parties aggrieved with no viable recourse in damages or other lawful means to obtain recompense for the value of the marijuana should it later prove to have been lawfully cultivated and possessed under the [CUA], MMP and/or Sonoma County Guidelines." Reiter claimed he had no adequate remedy at law other than the declaratory and injunctive relief sought in the FAC, and he asserted that in every case an aggrieved party would be unable to avoid mootness by asserting a damage claim as qualified immunity applies to the Department's actions.

*The Department's Demurrer*

The Department filed a demurrer to the FAC. It contended section 11479 and other statutory and procedural protections available to those in Reiter's situation provided sufficient due process protection.[8] Specifically, the Department argued Reiter's due

---

[7] The FAC stated that, at the trial court level, Reiter was making no claim regarding pre-seizure procedures, because he considered it barred by existing appellate precedent. Instead, "Reiter reserve[d] the claim for appeal."

[8] The Department's demurrer was accompanied by a request for judicial notice of a number of documents from Reiter's criminal proceeding, as well as claim forms Reiter

7

process rights were protected because he had an adequate post-deprivation civil remedy—he could present a damage claim to Sonoma County for wrongful destruction of the marijuana. (Gov. Code, §§ 815.2, subd. (a), 911.2.) The Department asserted Reiter had filed such a claim but did not pursue legal action after the county denied it. According to the Department, Reiter's decision not to pursue that remedy did not create a procedural due process violation.

Reiter responded by filing a "Non-Opposition to Demurrer." He conceded he had not filed a timely action in damages after his government claim was rejected. He contended he had not done so because under existing law, no damages are available to him or anyone else in his position, since "governmental immunity indisputably applies, as the search and seizure occurs pursuant to a facially valid warrant[.]" He claimed there could be no recovery of damages until a court recognized the unconstitutionality of section 11479 and of court orders for destruction of marijuana.

In a section of his non-opposition entitled "Preserving Issues for Appeal," Reiter requested leave to amend to allege two new claims. First, he would allege that he is entitled to damages in lieu of return of the destroyed marijuana under the authority of *Holt v. Kelly* (1978) 20 Cal.3d 560 (*Holt*) and *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113 (*Minsky*). Second, he would allege that the facts set forth in the affidavit in support of the warrant to search Reiter's property did not establish probable cause, and the existing law to the contrary is wrong. Reiter acknowledged the demurrer would be properly sustained without leave to amend based on existing authority but promised to "ride on to the Court of Appeal."

The court held a hearing on the demurrer, and after considering "the pleadings, the evidence and the argument of the parties," it sustained the demurrer without leave to amend and entered a judgment dismissing the action. Reiter filed a timely appeal from the judgment.

had filed with the county under Government Code section 910. Although Reiter did not oppose the request, the record does not disclose whether the trial court acted on it.

DISCUSSION

Reiter claims the trial court's order sustaining the demurrer, while admittedly compelled under existing law, was nonetheless erroneous because "existing case law on the issue of probable cause goes too far by establishing a rule of 'search and seize marijuana first, investigate its legality later.'" In addition, he contends due process is violated by destruction of seized marijuana pursuant to section 11479, "because there is no available recompense if the destruction later proves wrongful under the CUA and MMP."

Reiter argues the FAC states valid claims for declaratory and injunctive relief based on: (1) the violation of his right to be free from unreasonable search and seizure, (2) the alleged unconstitutionality of section 11479, and (3) the absence of an available damage remedy. He also asserts the FAC states, or could be amended to state, an equitable claim under *Holt* and *Minsky*.[9] We will examine each of these contentions in turn.

I.      *Standard of Review and the State of the Record*

We begin by restating the familiar principles governing our review of the trial court's ruling on a demurrer. "In performing our review, we are mindful that '[i]t is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading.' [Citation.] In considering the merits of a demurrer, 'the facts alleged in the pleading are deemed to be true, however improbable they may be. [Citation.]' [Citation.] Thus, when reviewing the propriety of a judgment sustaining a demurrer, the question of the plaintiffs' or petitioners' 'ability to prove . . . allegations,

---

[9] The Department argues Reiter has forfeited a number of his arguments because he failed to raise them in the trial court. While we agree it would certainly have been better practice for Reiter to articulate these arguments in the superior court, "following the sustaining of a demurrer without leave to amend, the plaintiff may advance on appeal new legal theories explaining why the allegations of the complaint state a cause of action." (*Lake Alamor Associates L.P. v. Huffman-Broadway Group, Inc.* (2009) 178 Cal.App.4th 1194, 1205, fn. 8.)

or the possible difficulty in making such proof does not concern the reviewing court[.]' [Citation.]

"In reviewing the superior court's order sustaining the demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory[.]' [Citation.] While our focus is on the pleadings, '[r]elevant matters that are properly the subject of judicial notice may be treated as having been pled.' [Citation.] Even if the trial court has not ruled on a party's request for judicial notice, we may ourselves take judicial notice of appropriate matters. [Citation.]" (*Requa, supra,* 213 Cal.App.4th at pp. 222-223, fn. omitted.)

Although a demurrer admits all the properly pleaded factual allegations of the complaint, it does not admit allegations that are mere conclusions of law. (*Faulkner v. Cal. Toll Bridge Authority, supra,* 40 Cal.2d at p. 329.) Thus, a demurrer does not admit purely argumentative allegations about the legal construction and operation of statutory provisions or about the legal propriety of the defendant's conduct. (See *Sklar v. Franchise Tax Board* (1986) 185 Cal.App.3d 616, 621.)

Reiter elected to proceed on appeal without a reporter's transcript of the January 30, 2013 hearing on the Department's demurrer. His election prevents us from determining what, if any, documents—beyond the pleading itself and the moving papers—the trial court considered in ruling on the demurrer. Thus, we do not know whether the trial court considered the documents attached to the Department's request for judicial notice.[10] (See *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 711 [reviewing court could not determine whether trial court considered exhibits to demurrer where plaintiff failed to furnish reporter's transcript of hearing on demurrer].) We also do not know

---

[10] In this court, the parties have not requested that we take judicial notice of these materials, and we decline to do so on our own motion. We also deny Reiter's July 12, 2013 request for judicial notice of the preliminary hearing transcript in his criminal case. Reiter did not seek judicial notice of that document below, and his request for judicial notice in this court plainly asks us to take notice of the facts contained in the transcript, rather than notice of the document itself. Such facts are not a proper subject of judicial notice. (E.g., *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7.)

10

whether the court offered Reiter the opportunity to amend his complaint at the hearing, and if so, whether Reiter declined that offer and chose to stand on his complaint.[11]

Even when the issue on appeal is whether a demurrer was properly sustained, a plaintiff must furnish the appellate court with an adequate record. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 478.) In the absence of the reporter's transcript, "the trial court is presumed to have entered a proper order." (*Fenton v. Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797, 809 (*Fenton*) [appellate court must accord presumption of correctness to trial court ruling on demurrer where hearing was not recorded], disapproved on another point in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 328, fn. 30 (*Katzberg*).) We could thus affirm the judgment based solely on Reiter's failure to provide an adequate record. (*Rossiter v. Benoit, supra,* 88 Cal.App.3d at p. 712.) Rather than base our decision on this procedural ground, however, we will resolve this case on the record before us. (See *Fenton, supra,* 135 Cal.App.3d at p. 809.)

II.    *California Law Bars Reiter's Claim for Declaratory and Injunctive Relief Based on Violation of his Right to Be Free from Unreasonable Search and Seizure.*

Reiter first argues the FAC states a valid claim for declaratory and injunctive relief based on the violation of his right to be free from unreasonable search and seizure. Reiter's fundamental claim appears to be that law enforcement officials must make a reasonable inquiry regarding the possible legality of marijuana before applying for a search warrant, and "where, as here, officer[s] executing a search warrant for marijuana find evidence suggesting the legality of marijuana under the CUA and MMP, they . . . have . . . the constitutional obligation, to act *reasonably* by delaying execution of the warrant, refraining from uprooting live marijuana plants, and reporting back to the magistrate to obtain a judicial reassessment of probable cause."

---

[11] This is not a purely academic concern, for it affects our standard of review. If Reiter elected not to amend his complaint, we must construe it strictly rather than liberally and presume he has stated as strong a case as he can. (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 445 (*Laidlaw Transit*).)

11

Reiter did not present this claim in the trial court, and in this court, he argues only that the FAC presently states a claim for violation of his right to be free from unreasonable searches and seizures. He does not argue his complaint can be *amended* to make out such a claim. Since it appears Reiter has elected to stand on the existing allegations of his complaint, we construe it strictly and assume the FAC states his case as strongly as possible. (See *Laidlaw Transit, supra,* 182 Cal.App.4th at p. 445.) As we explain, we conclude the claim is foreclosed by established case law.

First, to the extent Reiter argues law enforcement officials must take into account a person's possible status as a qualified patient under the CUA and MMP in establishing probable cause, the California Supreme Court has already held the probable cause determination "depends on all of the surrounding facts [citation], including those that reveal a person's status as a qualified patient or primary caregiver[.]" (*People v. Mower* (2002) 28 Cal.4th 457, 469 (*Mower*).) Thus, such a requirement is *already* part of California law. In *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, the court reversed a declaratory judgment that merely restated a Court of Appeal's holding on the constitutionality of a statute, because the declaration was "an idle and superfluous act[.]" (*Id.* at p. 747.) If a declaratory judgment restating the holding of a Court of Appeal is an idle and superfluous act, a declaration that merely restates the holdings of the California Supreme Court would be even more so.

Second, although Reiter complains about California decisions that, he claims, embrace the principle of " 'search and seize first, investigate legality later," a similar argument was raised and rejected in *Mower, supra,* 28 Cal.4th 457. There, the defendant asserted that a provision of the CUA "imposes an obligation on law enforcement officers to 'investigate first, arrest later': Such officers 'must determine if a person is cultivating or possesses marijuana,' 'if that person represents that he/she is' a qualified patient or primary caregiver, and 'how much [marijuana] can be grown or possessed in relation to the actual medical needs of' the person." (*Id.* at p. 468.) The Supreme Court disagreed, holding that the CUA "does not grant any immunity from arrest, and certainly no immunity that would require reversal of a conviction because of any alleged failure on

12

the part of law enforcement officers to conduct an adequate investigation prior to arrest."
(*Id*. at p. 469; accord, *People v. Kelly* (2010) 47 Cal.4th 1008, 1013 ["So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval."] )  Instead, the legality of marijuana possession or cultivation is properly raised by way of a motion to set aside the indictment or information under Penal Code section 995.  (*Mower, supra,* 28 Cal.4th at pp. 470-473.)

The same holds true for the issue of probable cause to search.  This appellate district has held police officers need not stop an otherwise valid search merely because they are presented with a medical marijuana card or physician recommendation.  (*People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059-1060.)  In *People v. Fisher* (2002) 96 Cal.App.4th 1147 (*Fisher*), when officers holding a valid search warrant arrived at the defendant's residence, the latter presented a certificate purporting to allow him to possess marijuana for medicinal purposes.  (*Id.* at p. 1149.)  The defendant claimed that after presentation of the certificate, the officers should have stopped the search, secured the premises, investigated his claim of lawful possession, and returned to the issuing magistrate for further instructions.  (*Id*. at pp. 1150-1151.)  The court rejected this argument, holding that the CUA created only an affirmative defense to prosecution which could be raised either by motion or at trial.  (*Id*. at pp. 1151-1152.)  The facts of Reiter's case are even less compelling than those in *Fisher,* because the FAC does not allege the officers had *prior* knowledge of Reiter's or the other cultivators' possession of medical marijuana cards; it alleges only that four separate cards were found *during* the search.  In short, under established California law, probable cause to search and seize possible contraband does not simply evaporate when police officers find medical marijuana recommendations.  (See *Littlefield v. County of Humboldt* (2013) 218 Cal.App.4th 243, 252-253 [reasonable suspicion for warrantless search not vitiated when police found marijuana recommendations, because CUA limits quantity of marijuana lawfully possessed to amount reasonably related to patient's medical needs]; *People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1018 [even if facts discovered after warrant

13

issued showed lack of probable cause, executing officers had reasonable grounds to believe they had probable cause at time warrant was issued].)

We are bound by the holdings of the California Supreme Court on these issues (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and although we are not bound by the views of our colleagues on the Courts of Appeal, we see no reason to depart from them. The California Supreme Court has already given Reiter a significant part of the relief he seeks: under its precedents, probable cause determinations must include consideration of a person's status under the CUA and MMP. (*Mower, supra,* 28 Cal.4th at p. 468.) Our Supreme Court has been equally clear, however, that the CUA and MMP provide only an affirmative defense to *prosecution* on charges of illegal cultivation or possession of marijuana. (*People v. Kelly, supra,* 47 Cal.4th at p. 1013.) Reiter's argument that law enforcement officers must conduct a more extensive investigation prior to obtaining a warrant is barred by existing precedent. (See *ibid.*; *Mower, supra,* 28 Cal.4th at p. 269; *Fisher, supra,* 96 Cal.App.4th at pp. 1151-1152.) We therefore conclude the FAC does not state a valid claim, either individually or as a taxpayer, for declaratory or injunctive relief based on the right to be free from what Reiter considers unreasonable search and seizure.

III.    *Section 11479 Does Not Violate Due Process Merely Because Reiter Presumes Other Remedies Are Unavailable.*

Reiter next argues the FAC states a valid claim for injunctive and declaratory relief because the summary, post-seizure destruction of marijuana pursuant to section 11479 violates due process for want of notice and hearing. We disagree.

In both the trial court and in this court, Reiter has made clear the premise of this argument is the claimed lack of any damage remedy for the destruction of marijuana. As he explains in his opening brief, "The summary seizure and destruction of marijuana pursuant to a search warrant and section 11479 violates the due process because there is currently no available recompense in the event the destruction ultimately proves

14

wrongful."[12]  Thus, Reiter's attack on the constitutionality of section 11479 is expressly predicated on an untested legal conclusion—that neither he nor other qualified patients may ever recover damages for the destruction of their marijuana if it is later established their cultivation or possession was lawful.

The FAC candidly admits there were other proceedings that might have provided redress to Reiter, but he never sought to have a court determine whether damages would be available through those proceedings.  Reiter chose not to seek return of his property under the authority of *Garden Grove, supra,* 157 Cal.App.4th 355, and he does not argue he followed any other statutory procedure for its return, although both the FAC and his opening brief concede they were available.  (See, e.g., § 11488.4, subd. (h) [criminal defendant may move for return of property on grounds there was no probable cause to believe it was forfeitable]; § 11492, subd. (c) [court may order bond or undertaking to preserve property interests of interested parties]; Pen. Code, § 1540 [restoration of property wrongfully taken pursuant to search warrant]; *Coy v. City of Los Angeles* (1991) 235 Cal.App.3d 1077, 1088-1089 [discussing statutes providing for return of property seized pursuant to search warrant].)[13]  He did not do so because, he alleged, the destruction of the marijuana rendered such a motion moot.

Although Reiter did file an administrative damage claim under Government Code section 910, he chose not to pursue a timely legal action after the county denied his claim.

---

[12] In the trial court, Reiter noted the Department had actually acknowledged the right of qualified patients to seek damages from the county if it were established they had been lawfully cultivating marijuana.  Reiter claimed, however, that the Department did not really believe damages were available and was merely so stating "because the claim is expedient and appears an easy-out."  Although we must accept the truth of the well-pleaded factual allegations of the FAC, we need not accept Reiter's unsupported and argumentative claims about what the Department allegedly believes.  (See *Sklar v. Franchise Tax Board, supra,* 185 Cal.App.3d at p. 621.)

[13] In fact, Reiter's opening brief states such motions "may be filed immediately after seizure of property and can be promptly heard by the trial court[.]"  Reiter became aware his marijuana had been seized the same day the Department's officers executed the warrant.  Reiter was represented by counsel at that time, and the officers spoke with counsel "immediately after the marijuana was seized[.]"

15

He asserts he did not pursue the latter action based upon his belief that governmental immunity would apply to the Department's actions. Despite his admitted failure to pursue these possible remedies, Reiter now asks us to permit him to litigate the constitutionality of section 11479 based on his unproven view that neither recovery of his property nor compensation in damages would have been available in other proceedings. We decline to do so.

First, we need not credit Reiter's allegations about either the mootness of a motion for return of property or the unavailability of damages under the Government Claims Act because those are merely conclusions of law and are not deemed admitted on demurrer. (*Faulkner v. Cal. Toll Bridge Authority, supra,* 40 Cal.2d at p. 329; see *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 289-292 [where plaintiff's claim that county's action was void ab initio was premised on allegations that were conclusions of law, court did not have to accept truth of those allegations].) Such allegations likewise cannot state claims in Reiter's capacity as a taxpayer, since " '[g]eneral allegations, innuendo, and legal conclusions are not sufficient' " to satisfy the requirements of Code of Civil Procedure section 526a. (*Connerly v. Schwarzenegger, supra,* 146 Cal.App.4th at p. 749.)

Second, to accept Reiter's premise that no damages are available to qualified patients in his circumstances, we would have to engage in speculation about the outcome of lawsuits and motions Reiter chose not to file. For example, we would have to be willing to speculate that if Reiter had filed an action for damages after denial of his government claim, the county would have asserted a defense of governmental immunity. We would further have to predict the defense would have been successful, and this would then have resulted in a denial of his claim for damages.[14] We think neither this court nor

---

[14] The Department argues there may be instances in which qualified immunity will not apply even if the marijuana is seized pursuant to a search warrant and then destroyed by order of the court. The Department hypothesizes that if, as Reiter claims in his brief, its officers deliberately made false statements in the section 11479 declaration, governmental immunity might not be available under those facts. (See *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 507, fn. 10 [no immunity would attach

16

the trial court can hold a statute unconstitutional based on nothing more than a party's forecast of the outcome of litigation that did not occur. As the Department correctly argues, Reiter's decision not to seek redress through other avenues does not create a due process violation. A potential remedy does not become inadequate merely because it has been lost due to a party's failure to avail himself of it. (See *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 835; cf. *Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 534 [State waived right to contest agency findings where it failed to seek judicial review as authorized by statute].)

Third, where a party has been wrongfully deprived of seized property, a post-deprivation remedy in damages suffices to satisfy due process requirements. For example, in *Sandrini Brothers v. Voss* (1992) 7 Cal.App.4th 1398, a farming partnership claimed the Department of Food and Agriculture had wrongfully seized grapes that had been treated with an " 'economic poison.' " (*Id*. at p. 1400.) The partnership filed an action for administrative mandamus seeking a ruling the seizure was wrongful and requesting damages. (*Ibid*.) The trial court held the statute under which the seizure had been conducted unconstitutional because it did not expressly provide for compensation in the event property was wrongfully seized. (*Ibid*.) The Court of Appeal reversed, holding that an action for damages under Government Code sections 815.2 and 911.2 provided for compensation, and this remedy was sufficient to satisfy the demands of procedural due process. (*Sandrini Brothers v. Voss, supra,* 7 Cal.App.4th at pp. 1405-1406; see also *Bonner v. City of Santa Ana* (1996) 45 Cal.App.4th 1465, 1475-1476 [homeless man whose belongings had been disposed of by city workers had no cause of action for damages based on a due process violation, because he could have sought damages for conversion], disapproved on another point in *Katzberg, supra,* 29 Cal.4th at pp. 320-321.)

Indeed, at least one court has held that an aggrieved party in Reiter's circumstances may seek damages for the destruction of marijuana. In *County of Butte v.*

under Gov. Code, § 820.6 where officer enforces policy in particularly arbitrary or egregious manner].) We agree with the Department to the extent that it cannot be said *as a matter of law* that governmental immunity will necessarily apply in *every* case.

17

*Superior Court* (2009) 175 Cal.App.4th 729 (*County of Butte*), the court held that a qualified medical marijuana patient, who destroyed marijuana plants he was cultivating under orders of a sheriff's deputy, was not prohibited from seeking damages for the unlawful destruction of the marijuana.[15] (*Id*. at pp. 733, 735, 738-739.) The plaintiff in that case alleged causes of action including violation of the Tom Bain Civil Rights Act (Civ. Code, § 52.1) and conversion, which, if successful, might result in an award of damages. (*County of Butte, supra,* 175 Cal.App.4th at p. 733; see Civ. Code, § 52.1, subd. (b) [individual whose constitutional rights have been interfered with may file civil action for damages].) The court permitted the plaintiff's action to go forward so the plaintiff could "seek[] an adjudication as to whether the deputy had probable cause to order [the plaintiff] to destroy his property, or whether a lack of probable cause led to a violation of his constitutional rights." (*Id*. at p. 738.)

Finally, Reiter expressly concedes his due process rights are *not* violated if a damages remedy is available. He agrees there is no due process violation if recompense is available under an equitable theory.[16] We will therefore turn to that question.

IV.     *The FAC Can Be Amended to State a Claim Under Holt and Minsky.*

This brings us to Reiter's final argument, which is that the complaint states, or could be amended to state, a claim under *Holt, supra,* 20 Cal.3d 560 and *Minsky, supra,* 11 Cal.3d 113. Unlike other arguments Reiter makes on appeal, he specifically raised this one in the trial court.

*Minsky* held that "the government in effect occupies the position of a bailee when it seizes from an arrestee property that is not shown to be contraband." (*Minsky, supra,*

---

[15] Reiter claims *County of Butte* is distinguishable because it involved a warrantless seizure, and although he describes the case as "authorizing monetary damages for wrongful destruction of marijuana," he does not argue the FAC states or could be amended to state a cause of action under that case. Reiter rejects the application of *County of Butte* to the facts of this case based on his legal assumption that governmental immunity will always apply to prevent a damage claim.

[16] In response to the court's questions at oral argument, Reiter's counsel confirmed that the existence of a damages remedy would remove at least one premise on which his claimed constitutional violation is based.

18

11 Cal.3d at p. 121.) The court explained that the arrestee retained the right to recover the specific property taken, and since such claims are not claims for money or damages, they are not subject to the requirements of the Government Claims Act. (*Id.* at pp. 121-122.) In *Holt,* our Supreme Court clarified that a claim may be made under *Minsky* "even though some or all of the property may have been dissipated and [the governmental] respondent may be compelled to respond in damages in lieu of property." (*Holt, supra,* 20 Cal.3d at p. 565, fn. omitted.) Thus, a claim under these cases is available in "situations in which the defendant [has] a duty to return seized property, enforceable by way of mandamus." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 743.)

In this case, the FAC contains the rudiments of a *Minsky* claim. Reiter alleges he has a lawful right under the CUA and MMP to cultivate or possess marijuana. He alleges his property was seized and later destroyed by the Department. He also alleges the criminal charges against him were ultimately dismissed in full. Even if those allegations are not themselves sufficient to state a *Minsky* claim, we conclude they can be amended to do so. Reiter's response to the Department's demurrer states, "Reiter would allege . . . that he is entitled to the return of all or at least a portion of the marijuana which was seized, as he was at the time of seizure and is now a qualified medical marijuana patient, and at the time of the seizure he was cultivating the marijuana lawfully for medicinal purposes. The government having destroyed the marijuana, Reiter would thereupon pray for payment in damages in lieu of return of the property, pursuant to *Holt* and *Minsky*." (Fn. omitted.) Assuming Reiter were to amend his complaint in the manner he outlined above, we conclude it would suffice to state a *Minsky* claim. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511-512 [*Minsky* claim may be stated even if pleading does not expressly seek recovery of specific property].)

We therefore hold the trial court erred in sustaining the Department's demurrer without leave to amend, because it appears the FAC can be amended to state a claim under *Minsky.* We will remand to permit Reiter the opportunity to do so.[17]

---

[17] We obviously offer no opinion on the factual merit of Reiter's *Minsky* claim. Thus, we express no view on the validity of the Department's argument that Reiter would not be entitled to return of his property because he pleaded guilty to misdemeanor possession of marijuana and therefore did not possess it legally. (See *Minsky, supra,* 11 Cal.3d at p. 117, fn. 3 [noting claim could fail "on the ground that the [property] was contraband"].) The record before us does not contain enough information to evaluate that argument. In addition, we express no opinion on other possible barriers to recovery, such as whether the claim is timely under any applicable statute of limitations or the extent to which issues decided in Reiter's criminal case may preclude relitigation of issues in this case. (See *id.* at p. 119, fn. 6 [statute of limitations]; *McGowan v. City of San Diego* (1989) 208 Cal.App.3d 890, 895 [collateral estoppel may apply in civil case based on ruling on motion to suppress in criminal case].) The parties will have the opportunity to litigate these and other issues on remand.

DISPOSITION

The judgment is reversed and the matter is remanded to permit Reiter the opportunity to amend his complaint to state a claim under *Minsky, supra,* 11 Cal.3d 113.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.