Filed 11/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BULL FIELD, LLC, et al., | B322603 |
| Plaintiffs and Appellants, | (Merced County Super. Ct. No. 1CV-02453) |
| v. | |
| MERCED IRRIGATION DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Merced County. Brian L. McCabe, Judge. Affirmed.

Whitney, Thompson & Jeffcoach, Timothy L. Thompson, Nikole E. Cunningham; McCormick, Barstow, Sheppard, Wayte & Carruth and Scott M. Reddie for Plaintiffs and Appellants.

Duane Morris, Thomas M. Berliner, Jolie-Anne S. Ansley; Miller Starr Regalia and Matthew C. Henderson for Defendant and Respondent.

_____

Appellants Bull Field, LLC, Barley, LLC and Colburn Hills Ranch, LLC (Appellants) appeal from a judgment denying their petition for a writ of mandate (Petition). Appellants sought an order compelling respondent Merced Irrigation District (District) to sell them surplus surface water for the 2019 water year. Appellants' farmland is outside the District, but within the same groundwater basin as the District's service area. The District authorized the sale of surplus water to out-of-district users for 2019 but denied Appellants' application to purchase such water.

The District claimed, and the trial court found, that the District's general manager denied Appellants' applications to purchase surplus surface water because the District had a history of difficult dealings with Appellants' manager. Substantial evidence supports that finding. The District acted within its discretion in making its decision on this ground, and we therefore affirm.

## BACKGROUND

### 1. The Parties

The District provides irrigation water to farmers within its approximately 164,000 acres of service territory pursuant to its statutory obligations. (See Wat. Code, §§ 20513, 20560.)[1] Most of the District's water comes from the Merced River, which the District distributes through a conveyance system of canals, irrigation ditches, and natural waterways.

Appellants Bull Field, LLC and Barley, LLC own or lease land outside the District but adjacent to the District in what the parties refer to as the District's "sphere of influence." That

---

[1] Subsequent undesignated statutory references are to the Water Code.

2

sphere encompasses land that is within the same groundwater basin as the District's service territory.[2] The District's main canal runs through an almond orchard belonging to Appellants that is located outside the District's boundaries.

## 2. The District's Decision to Sell Surplus Surface Water in 2019

When sufficient surface water is available in a particular year, the District's board may authorize the sale of surplus water to out-of-district users. (§ 22259.) The District decided to offer such surplus water for sale in 2019.

The District's decision was described in a document entitled the "2019 Irrigation Season Water Supply Implementation Plan" (the 2019 Plan), which the District's board approved in a meeting on March 5, 2019. The approved plan called for out-of-district sales at a transfer price of $100 per acre foot of water.

In implementing the 2019 Plan, the District's objectives were to "[m]aintain equitable service to [District] growers," "[m]eet [the District's] reservoir carryover storage goal at the end of the season," and "[c]ontrol and properly account for all water delivered and conveyed through [the District's] facilities." The 2019 Plan also identified various guidelines to achieve these objectives. One of the identified guidelines was "Surface Water

---

[2] Appellant Colburn Hills Ranch, LLC (Colburn) apparently also owns land located within the District. The trial court found that no right by Colburn to purchase surface water distributed within the District was at issue in this case, and that Appellants' Petition sought only an order compelling the sale of surface water outside the District. Appellants do not dispute that finding on appeal. We therefore refer to "Appellants" generally without distinguishing among them.

3

Allocation Management." In connection with that guideline, the plan explained that "there is no limiting surface water allocation for the 2019 irrigation season."

The District announced its decision to sell surplus water in a press release issued on March 6, 2019, the day after the board's meeting. The press release stated that "[t]here will be no restrictions on surface-water allocations this year, and water transfers to lands within [the District's] Sphere of Influence (SOI) were approved." The press release also stated that "[g]rowers within [the District's] SOI may execute water transfer agreements and receive [District] surface water for $100 per acre foot."

**3.    Communications Between the District and Appellants Concerning the Sale of Surplus Water**

On March 7, 2019, the day after the District's press release, the District's general manager, John Sweigard, left a telephone message for Appellants' manager, Michael Thomason. The message stated that Sweigard did not have authorization from the District's board to sell "transfer water" to Thomason or his entities.

Thomason testified that he was surprised by the message because Appellants had not yet submitted any application and Appellants had purchased surplus water from the District for many years without objection or conditions. Despite Sweigard's message, Thomason submitted applications on behalf of Appellants to purchase surplus water. After Thomason had submitted those applications, Sweigard left a second voicemail message for Thomason stating that the board had not approved

4

transfers to any of Thomason's entities and that Appellants' applications would not be approved.

Sweigard testified that his reference to the lack of board approval in his two voice messages did not imply that the board was required to approve the decision to deny Appellants' applications. Rather, Sweigard meant that the board was the District's "ultimate authority," but that he, as general manager, was exercising the authority given to him to deny Appellants' applications. Sweigard testified that he made that decision himself because of the "multiplicity, scope, and repetitive nature of the disputes between the District and [Appellants]," which he stated "take up an undue proportion of expense, staff time, and attention."

Following a subsequent exchange of letters by counsel for Appellants and the District, Appellants filed their Petition on June 14, 2019.

### 4. Proceedings in the Trial Court

The trial court initially set a trial date of September 25, 2019, which it later continued to October 28, 2019. On October 10, 2019, the trial court held a hearing on a discovery dispute related to the District's unclean hands defense. That defense focused on the District's claim that, after the District had denied Appellants' applications to purchase surplus water, Appellants had made unauthorized diversions of water from the District's main canal. After the hearing, the trial court granted the District's discovery motion and continued the hearing on Appellants' Petition to February 28, 2020.

On February 14, 2020, just 14 days before the hearing on Appellants' Petition, Appellants filed an ex parte application seeking a continuance of the hearing. The trial court denied the

request. Along with the denial the trial court issued an order directing briefing for the hearing. The order instructed Appellants to file a brief by February 19, 2020, addressing: "[a]ll facts and legal authority supporting their contention that [the District] 'has a present and ministerial duty to supply water to [Appellants]," and "[a]ll facts and legal authority supporting [Appellants'] contention on whether or not the denial of [Appellants'] water application, as alleged in [the Petition], was made as the result of a proceeding in which *by law* a hearing is required to be given, evidence is required to be taken and secretion [*sic*] in the determination of facts is vested in the [District] Board."

Appellants filed their brief on February 19, 2020, and the District subsequently filed a response. The trial court then heard oral argument on February 28, 2020.

On May 28, 2020, the trial court issued a 153-page ruling denying Appellants' Petition. Following an exhaustive review of the written evidence, the trial court found that Appellants had failed to prove that the District had a ministerial duty to sell them surplus water. The trial court also found that the District's decision to deny Appellants' applications to purchase surplus water was not arbitrary or capricious.

## DISCUSSION

### 1. Appellants' Petition and this Appeal Are Moot

Appellants' Petition sought an order compelling the District to sell them water pursuant to the District's 2019 Plan. There is no dispute that the 2019 Plan applied only to the distribution of water for the 2019 water year, which ended in October 2019.

Appellants acknowledge that the 2019 season is over. However, they request that this court nevertheless exercise its

6

discretion to consider the appeal because the issues are "capable of repetition yet evading review."

This court has discretion to consider an appeal in a case that is moot if the case " ' "presents an issue of broad public interest that is likely to recur" ' " or " ' "when there may be a recurrence of the controversy between the parties." ' " (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 88–89.) The legal issue presented here—whether the District had an obligation to sell surplus water to a particular out-of-district user once its board had approved sales of surplus water—is of public interest and apparently has not been addressed in any reported decision. Moreover, it is conceivable that the same dispute may arise between these same parties in a future water year. We therefore exercise our discretion to consider the merits of the appeal.[3]

---

[3] Despite acknowledging that their appeal is moot, Appellants devote most of their argument on appeal to the claimed unfairness of the proceedings in the trial court. As alternative relief, Appellants request that, in light of this alleged unfairness, we reverse and remand the case to the trial court for further consideration. The trial court's procedural decisions are case-specific and present no issue of public importance that is likely to evade review. However, Appellants' procedural arguments bear upon the deference that we should give to the trial court's factual findings. As discussed below, in deciding whether District acted in an arbitrary or capricious manner, we review any "foundational" factual findings under the deferential substantial evidence standard. If, as Appellants argue, the trial court in fact unfairly excluded evidence supporting Appellants' claims, that could affect the fairness and reliability of the trial court's factual findings. That result could in turn affect whether

## 2. Governing Law and Standard of Review

Appellants' Petition sought a writ of mandate under the authority of Code of Civil Procedure section 1085. That section authorizes a court to issue such a writ "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." (Code Civ. Proc., § 1085, subd. (a).)

To obtain writ relief under this section, a petitioner must show " '(1) a clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty.' " (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539–540, quoting *Baldwin-Lima-Hamilton Corp. v. Superior Court* (1962) 208 Cal.App.2d 803, 813–814.) A writ may issue to correct an agency's abuse of discretion "whether the action being compelled or corrected can itself be characterized as 'ministerial' or 'legislative.' " (*Santa Clara County,* at p. 540.) However, in either case, mandamus may issue only to compel the performance of an act "which the law specially enjoins." (Code Civ. Proc., § 1085, subd. (a); *Faulkner v. California Toll Bridge Authority* (1953) 40 Cal.2d 317, 326.) Thus, mandamus "will not lie to

---

this court can fairly defer to those findings. We therefore consider Appellants' procedural claims as well as their legal arguments. In light of our disposition, there is no need to consider the propriety of remanding an admittedly moot case to require further proceedings in the trial court.

8

control discretion within the area lawfully entrusted to the administrative agency." (*Faulkner*, at p. 326.)

In reviewing an agency's "quasi-legislative" decision, "the trial court does not inquire whether, if it had power to act in the first instance, it would have taken the action taken by the administrative agency. The authority of the court is limited to determining whether the decision of the agency was arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair." (*Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 786 (*Fullerton*).) On appeal, we review the trial court's decision de novo under the same standard, except where the trial court made " 'foundational factual findings.' " (*Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 250 (*Abatti*), quoting *City of Arcadia v. State Water Resources Control Bd.* (2006) 135 Cal.App.4th 1392, 1409.) In that case, the trial court's findings of fact " 'are binding on appeal if supported by substantial evidence.' " (*Abatti*, at p. 250, quoting *City of Arcadia*, at p. 1409.)

### 3. The Trial Court Did Not Abuse Its Discretion in Its Procedural Orders

Appellants argue that they were deprived of an opportunity to argue all the relevant issues before the trial court issued its ruling on their Petition. Appellants claim that the trial court set a short briefing schedule on limited issues without giving Appellants the opportunity to file a reply brief. They argue that because these limited issues did not include the question of whether Sweigard acted arbitrarily and capriciously in declining to sell them surface water, Appellants believed that this issue would be addressed in a future hearing, and therefore decided not to present all their evidence. Appellants claim that this

9

abbreviated schedule and briefing order therefore deprived them of an opportunity to argue their "arbitrary and capricious" theory. For the same reasons, Appellants claim that the trial court erred in denying their motion for a new trial on the ground of surprise.

We find no abuse of discretion in the trial court's procedural rulings. Appellants' own conduct caused the abbreviated time for briefing and the consequent lack of a reply brief. As discussed above, after several continuances, the hearing on Appellants' Petition was scheduled for February 28, 2020. Appellants acknowledge that they intended to have their Petition heard under the rules applicable to noticed motions. This meant that, absent an order specifying a different schedule, their moving papers had to be filed and served 16 court days before the hearing, or by February 4, 2020. (Code Civ. Proc., § 1005, subd. (b); Cal. Rules of Court, rule 3.1300(a).)[4] Rather than filing papers supporting their Petition on that date, Appellants waited until February 3, 2020, to seek opposing counsel's agreement to continue the hearing. When that attempt was unsuccessful, Appellants then waited until February 14th to move ex parte for a continuance.

The trial court acted within its discretion in denying the motion for a continuance.[5] Appellants' stated ground for the

---

[4] February 12th and February 17th were both court holidays. (See Code Civ. Proc., § 135; Gov. Code, § 6700.)

[5] "The granting or denying of a continuance is a matter within the court's discretion, which cannot be disturbed 'on appeal except upon a clear showing of an abuse of discretion.' " (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 448, quoting *People* ex rel. *Dept. Pub. Wks. v. Busick* (1968) 259 Cal.App.2d 744, 749.)

continuance was the need to try facts relating to the District's unclean hands defense, which was based upon Appellants' alleged diversion of water from the District's main canal. However, that issue was not new. The District asserted its unclean hands defense in the answer that it filed on July 19, 2019. As mentioned, the defense was also the subject of a motion to compel that the trial court decided on October 10, 2019. Appellants represented in their ex parte request for a continuance that the trial court's ruling on that discovery motion had the effect of "deeming" the District's equitable defenses "relevant to the Petition." Yet at that same October hearing Appellants agreed with the trial court's proposal to continue the hearing on their Petition to February 28, 2020, without raising any concern about the timing or the need for a trial of factual issues. Appellants did not raise any such concern until they filed their ex parte motion, well after the deadline for filing their prehearing briefs. Thus, the trial court could reasonably have found that Appellants' continuance request was untimely.[6]

The trial court also could have reasonably concluded that it would be more efficient to resolve the legal issues raised by Appellants' Petition before deciding whether any trial on affirmative defenses was necessary. The record suggests that the trial court made such a practical determination. The court ordered briefing on specific legal issues while assuring Appellants that, if facts concerning the District's equitable defenses then

---

[6] Neither the trial court's written order denying Appellants' ex parte application nor the transcript of the hearing on that application contains an explanation of the trial court's reasons for denying the continuance.

11

needed to be tried, the court would set a later hearing "based on both your schedules."

Having denied Appellants' request for a continuance, the trial court could have simply proceeded to the hearing on Appellants' Petition without any timely briefing, and then find that Appellants had failed to meet their burden of proof. Instead, the court gave Appellants an opportunity to present their evidence and make their arguments in support of their Petition under an expedited briefing schedule.

Appellants complain that the trial court's order directing the issues for the expedited briefing did not include the issue of whether the District acted in an arbitrary and capricious manner in denying Appellants' applications to purchase surplus water. But Appellants did not object to the scope of the briefing or seek any clarification of the briefing order, and in fact specifically stated at the ex parte hearing that they had no objection to the trial court's order upon receiving the court's assurance that any equitable issues could be tried later. Appellants also did not request any opportunity to later brief additional legal issues, and the trial court gave no indication that it contemplated such additional briefing.

Nor did the trial court's order expressly limit the issues that Appellants could address. At best for Appellants, the order was ambiguous as to whether the trial court intended to limit the scope of the briefing. But Appellants did not seek clarification at the time, and apparently did not feel constrained in the issues that they could address. The brief that Appellants filed in fact included a discussion of the arbitrary and capricious issue under the heading, "[The District's] Decision To Deny Petitioners' Water Applications Was Arbitrary, Capricious, Entirely Lacking In

Evidentiary Support, Unlawful, And Procedurally Unfair." Having made no request for further briefing and having addressed the arbitrary and capricious issue themselves in the brief that they filed, Appellants can hardly complain that the trial court then ruled on the issue.[7]

We therefore reject Appellants' argument that the trial court unfairly limited the arguments and evidence that Appellants were permitted to present in support of their Petition. Consequently, we also conclude that there is no reason to depart from the substantial evidence standard of review in considering the factual findings underlying the trial court's ruling.

---

[7] Appellants' argument that the trial court should have granted a new trial on the ground of "surprise" fails for the same reason. In moving for a new trial, Appellants argued that in light of the trial court's comments at the February 14, 2020 hearing, Appellants' counsel "reasonably believed that the issues to be briefed, heard, and decided were limited to the two issues identified by the Court." In support of that argument, Appellants' counsel submitted a declaration stating that Appellants "did not submit briefing and evidence on any of those other issues" not identified in the trial court's order, including "whether the adjudicatory decision by John Sweigard was arbitrary and capricious." That statement is directly contradicted by Appellants' brief, which, as mentioned, contained a section addressing precisely that issue. In denying the motion for a new trial, the trial court noted this section of Appellants' brief as well as the oral argument that Appellants presented on the same issue at the hearing.

13

4. **Appellants Failed to Show that a Writ of Mandate Should Issue**

   A. **The District Did Not Have a Ministerial Duty to Sell Surplus Surface Water to Appellants**

Appellants argued below that the District had a ministerial obligation to sell excess water to them and that a writ should issue to compel compliance with this clear obligation. They do not attempt to support that legal argument on appeal. They have therefore forfeited the contention. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1509.)

In any event, the contention is inconsistent with the controlling statute. Section 22259 states that an irrigation district "may" enter into a contract for the sale or lease of surplus water if its board "deems it to be for the best interest of the district." This language cannot reasonably be interpreted to impose a mandatory duty on the District to sell surplus water to Appellants. The term "may" plainly means that the District may exercise discretion in determining whether to enter into a contract to sell surplus water. (See *Glendale City Employees' Assn., Inc. v. Glendale* (1975) 15 Cal.3d 328, 344 (*Glendale*) [" 'The critical question in determining if an act required by law is ministerial in character is whether it involves the exercise of judgment and discretion' "].)

In *Abatti*, the court interpreted several provisions of the Water Code that contain similar language. The appellant in that case argued that sections 22252.1 and 22252.3 require an irrigation district to provide notice and take into account the appellant farmers' " 'beneficial needs' " when there is an expected water shortage. (*Abatti, supra,* 52 Cal.App.5th at p. 278.) The

14

court rejected the argument, noting that the statutes at issue use the term "may" in describing a district's obligations. The court explained that both sections "use the term 'may,' not 'shall' or 'must,' and both confirm that they place no limitation on a district's power to control water distribution. Thus, these statutory provisions permit, but do not require, compliance with their irrigation application procedures." (*Id.* at pp. 278–279.)

Section 22259 similarly uses the term "may" rather than "shall" or "must." The only limitation that section 22259 imposes is that a district's board must find that the sale or lease of surplus water is in the district's best interest. That section does not state that, once a board has made such a decision, an irrigation district *must* sell to all or any prospective purchasers. It states that the district "may" do so. Thus, there is no mandatory statutory obligation for an irrigation district to sell surplus water in any particular circumstance. Appellants do not cite any other statute, regulation or District rule establishing such a mandatory obligation. The decision whether and to whom to sell such water is therefore committed to the District's discretion.

### B. The District Did Not Abuse Its Discretion in Declining to Sell Surplus Water to Appellants

The conclusion that the District had the discretion to decide whether and when to sell surplus water does not end our analysis. As Appellants correctly point out, mandamus may also issue to correct an agency's discretionary decision if that decision was made in an arbitrary or capricious manner. (*Glendale, supra,* 15 Cal.3d at p. 344, fn. 24 [" 'While mandamus will not lie to control the discretion exercised by a public officer or board . . .

it will lie to correct an abuse of discretion by such officer or board' "], quoting *Baldwin-Lima-Hamilton Corp. v. Superior Court, supra,* 208 Cal.App.2d at p. 823; *Fullerton, supra,* 32 Cal.3d at p. 786; *Fair Education Santa Barbara v. Santa Barbara Unified School Dist.* (2021) 72 Cal.App.5th 884, 896 (*Santa Barbara*) [review of an agency's legislative determination is "limited to an inquiry of whether the act was arbitrary, capricious, or entirely lacking in evidentiary support"].)

However, judicial review of such discretionary decisions is highly deferential. " 'Quasi-legislative administrative decisions are properly placed at that point of the continuum at which judicial review is more deferential; ministerial and informal actions do not merit such deference, and therefore lie toward the opposite end of the continuum.' " (*Santa Barbara, supra,* 72 Cal.App.5th at pp. 893–894, quoting *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 575–576.) A reviewing court may issue a writ of mandate that requires legislative or executive action " 'to conform to the law,' " but it may not " 'substitute its discretion for that of legislative or executive bodies in matters committed to the discretion of those branches.' " (*Michael Leslie Productions, Inc. v. City of Los Angeles* (2012) 207 Cal.App.4th 1011, 1026 (*Michael Leslie*), quoting *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 445.)

### i. *The District had a duty not to act arbitrarily or capriciously*

The District argues that its decision to deny Appellants' application to purchase surplus water is not reviewable even under this highly deferential standard. It claims that in offering water to out-of-district purchasers like Appellants, the District

16

was not acting "under any obligation or duty pursuant to its capacity as a governmental entity, but in its capacity as an actor in the private marketplace for its own proprietary purposes." The District suggests that in this capacity the District's exercise of its "proprietary discretion" is unreviewable in a writ proceeding and is constrained only by the common law of contract.

We reject the argument that the District had *no* public responsibility as a government agency in making its decision not to sell water to Appellants. The District cites *Jenison v. Redfield* (1906) 149 Cal. 500 (*Jenison*), in support of its claim that it owes no duty to sell water to out-of-district users. That case stands for the proposition that the ultimate purpose of an irrigation district is " 'the improvement, by irrigation, of the lands *within* the district.' " (*Abatti, supra,* 52 Cal.App.5th at p. 257, italics added, quoting *Jenison*, at p. 503.) However, it does not support the conclusion that an irrigation district is permitted to act arbitrarily in selling water to out-of-district users.

In *Jenison*, the court held that a landowner possessing lands both within and without an irrigation district had no right to receive from the district "any portion of his share of water for use upon said land without the boundaries of the district." (*Jenison*, *supra*, 149 Cal. at p. 501.) However, that case was decided well before the Legislature enacted section 22259, which gives irrigation districts the discretion to provide surplus water outside the district. In contrast to that discretionary authority, the court's decision in *Jenison* was based on the premise that the water an irrigation district distributes "can be used only for the irrigation of lands within the district, and the irrigation district has no authority to distribute it for any other purpose." (*Id.* at

p. 504.) Thus, the court in *Jenison* did not consider any duty that an irrigation district might assume in selling water for use outside the district because it held that the district had no power to do so.

Under the plain language of section 22259, an irrigation district has the discretion to sell surplus water outside the district if it decides that it is in its best interest to do so. There is no need to consider here whether a reviewing court could ever interfere with a district's decision that it had no such surplus water, or, if so, whether the sale of *any* such water outside the district was in its best interest. Here, the District decided that it had surplus water to sell to out-of-district users. The question therefore is whether the District's decision about *which* out-of-district users could purchase such water is unreviewable. In other words, could the District arbitrarily discriminate among the prospective out-of-district purchasers of surplus water on the ground that it was acting in a private capacity?

We believe the answer is no. The District is a public agency. (See § 20570 ["It is reaffirmed that [irrigation] districts are state agencies formed and existing for governmental purposes"]; *Abatti, supra,* 52 Cal.App.5th at p. 257 ["California courts have long held that irrigation districts operate in a public capacity"].) And section 22259 makes clear that a decision whether to enter into a particular contract for the sale of water is within the scope of such an agency's statutory duties. (See also § 22228 ["A district may contract to perform and perform any agreement with any number of persons or public corporations or agencies for the exchange, transfer, or delivery to or by either or both parties of any water right or water"].) More generally, numerous courts have recognized that a public agency's decision

18

concerning the award of a contract is a legislative or quasi-legislative act. (See, e.g., *Michael Leslie, supra,* 207 Cal.App.4th at p. 1020; *Santa Barbara, supra,* 72 Cal.App.5th at pp. 894–895; *SN Sands Corp. v. City and County of San Francisco* (2008) 167 Cal.App.4th 185, 191; *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1253.)

In addition, water is of course an important and valuable public resource. (Cf. *Abatti, supra,* 52 Cal.App.5th at pp. 256–257 [all property acquired by an irrigation district is held in trust, including water and water rights], citing § 22437.) Under the District's "proprietary discretion" theory, the District would be immune from judicial review of any decision that it might make concerning which out-of-district users had the right to purchase this important resource, no matter how arbitrary such a decision might be, and even if the decision had nothing to do with the District's own interests. Thus, for example, under the District's theory the District could presumably decide to offer water only to out-of-district purchasers who have a particular Zodiac sign or who attended a particular college, free of any judicial oversight. The District has not provided any authority for this type of immunity, and we decline to recognize it.

ii.    ***This court may not interfere with a decision of the District based upon the District's own best interest***

The conclusion that the District's alleged arbitrary acts are subject to judicial review does not fully explain the scope of that review. An agency often exercises its discretion within the context of particular rules governing its purpose and authority. Thus, a public entity's discretion may be limited by law or by its own rules. (See *Michael Leslie, supra,* 207 Cal.App.4th at p. 1022

19

[an ordinance passed by a municipal corporation within the scope of its authority has the same force over it as a statute]; (*Pozar v. Department of Transportation* (1983) 145 Cal.App.3d 269, 271 [a writ may issue to direct an agency to follow its own rules when the agency has abused its discretion].)

Numerous statutes prescribe the powers and purposes of an irrigation district. Many of those statutes provide such districts with broad authority to accomplish their overall purpose of putting water to "beneficial use." (§§ 22075, 22076, 22078, 22225, 22228, 22230; see also *Abatti, supra,* 52 Cal.App.5th at p. 265 [irrigation district has "broad powers" to control and distribute water consistent with the purpose of supporting irrigation and other beneficial uses].) Irrigation districts are also subject to specific statutory limitations on how they distribute water within their districts. (See, e.g., §§ 22250 [water distributed for irrigation purposes must be apportioned ratably to each landowner], 22252 [water shall be distributed "equitably" among those offering to make the required payment], 22257 [districts must establish "equitable rules" for the distribution and use of water].) However, section 22259 is the only statute that specifically applies to the sale of water to out-of-district users.[8]

_____

[8] Section 22252 provides in full that "[w]hen any charges for the use of water are fixed by a district the water for the use of which the charges have been fixed shall be distributed equitably as determined by the board among those offering to make the required payment." Although Appellants do not make the argument, that statute, read broadly, could apply to water sold to out-of-district users once a board has established a price. However, unlike section 22259, section 22252 refers generally to

The only requirement that section 22259 expressly establishes is that a district board must "deem" a decision to *provide* surplus water outside the district to be "for the best interests of the district." Thus, by its terms, the section does not limit a district's decision *not* to enter into such a contract, even if such a contract might be in the district's best interest.

However, the record shows that the District itself assumed such an obligation. In his declaration submitted in opposition to Appellant's Petition, Sweigard testified that he had the "authority and discretion" as the District's general manager to "decide whether or not . . . individual sales are in the District's best interests, on a case by case basis." And a board member testified that Sweigard had the authority to deny particular water purchase applications "based on his opinion if it's in the best interest of the district to do so." Moreover, absent some other legitimate and compelling circumstance, a decision to refuse an out-of-district offer to purchase surplus water even though the district believed the purchase would be in its own interest may fairly be characterized as arbitrary. Thus, we conclude that the District's discretion to decline Appellants' offer to purchase surplus water was at least limited by the requirement that it act in its own best interest.

---

"water" rather than specifically to "surplus water," and its requirement of equitable distribution to all who offer to pay contradicts the discretion that section 22259 gives to a district board in entering into contracts for the sale of surplus water. We conclude that the more specific statute controls. (See *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1408 [a specific statute controls over a more general one].)

Appellants have not identified any other specific limitation on the District's discretion. Appellants refer to the Sustainable Groundwater Management Act (SGMA, § 10720 et seq.), but they do not identify any particular provision in that act that would *require* the District to sell them water under any particular circumstance. The District also submitted evidence showing that the District has only voluntary obligations to preserve groundwater and that Appellants' land falls outside the geographic area of the obligations that the District has assumed. Appellants do not dispute that evidence on appeal. Thus, although the District may have a policy to promote surface water use when available to preserve groundwater, Appellants do not identify any legal requirement establishing when or if the District must exercise its discretion in favor of that policy rather than to further other District objectives.

Nor do Appellants identify any internal District rules that required it to sell them surplus water. Appellants point to various District policies and resolutions that establish a general goal of using surface water—including sales to sphere of influence users—to preserve groundwater. But a general goal or policy is far different from a requirement that the District sell water to every out-of-district user applicant, regardless of other circumstances, or to Appellants particularly. That the District had historically done so does not establish the kind of clear legal duty that this court may enforce through a writ of mandate.

The District's 2019 Plan also did not establish such a duty. The plan stated that there would be "no limiting surface water allocation for the 2019 irrigation season." As the trial court correctly reasoned, this reference to the "allocation" of water concerned in-district users who are entitled to an apportionment

of District surface water, absent shortages. (See §§ 22250, 22252.1, 22252.3.) The trial court summarized the undisputed extrinsic evidence supporting the conclusion that the District owed no duty to allocate surplus water to out-of-district users. Appellants do not challenge that evidence on appeal.

The minutes of the meeting at which the District's board approved the 2019 Plan also do not support any duty to sell to Appellants. The minutes simply summarized the 2019 Plan and discussed a general objective to "maintain equitable service to all [District] growers, meet the Boards reservoir carryover storage goal(s), and to control and properly account for all water conveyed through [District] facilities." That general objective did not create any specific duty toward out-of-district purchasers such as Appellants.

Appellants also cite the press release that the District issued announcing the 2019 Plan. Like the plan itself, the press release contained language referring to the lack of restrictions on "surface water allocations." And, like the language in the plan, this reference concerned allocations to *in-district* users, not to the rights of out-of-district applicants.

The press release also stated that "[g]rowers within [District's] SOI may execute water transfer agreements and receive [District] surface water for $100 per acre foot." Even if one assumes that a press release could establish a duty binding on the District, that language did not do so. The press release did not state that the District was obligated to enter into water transfer agreements with each applicant. Any doubt on that score was dispelled by the form agreement itself, which stated that the agreement "is not valid until approved and initialed by [the District]."

Thus, in deciding whether to sell surplus water to Appellants, the District's discretion was limited only by its own internal requirement that it act in its own best interest. Further, as explained below, so long as the District actually made a decision based upon an assessment of that interest, this court may not substitute its judgment for that of the District.

In *Michael Leslie,* the court considered the effect of a Los Angeles city charter provision that permitted the city to " 'reject any and all bids or proposals . . . *when to do so would be to the advantage of the City.*' " (*Michael Leslie, supra,* 207 Cal.App.4th at p. 1022.) After soliciting bids for the operation of golf carts on the city's golf courses, and after the city's reviewing department had decided that the plaintiff in that case had submitted the best proposal, the city rejected all the bids it had received and decided to operate the carts itself. (*Id.* at pp. 1016–1020.)

The court held that the city's decision to reject all bids could not be remedied through mandamus, even though the plaintiff alleged that an unsuccessful bidder sought to improperly influence city decision makers. (*Michael Leslie, supra,* 207 Cal.App.4th at p. 1025.) The court reasoned that the decision by the city's reviewing agency and the city council concerning what choice would be to the city's advantage "was a classic discretionary function" that the court could not second-guess. (*Id.* at p. 1026.) The court held that a judicial judgment that "self-operation is not to the advantage of the City, and only an award of the concession to [the plaintiff] would be to the advantage of the City" would "exceed the scope of mandamus review." (*Ibid.*)

In reaching that conclusion, the court in *Michael Leslie* cited *Stanley-Taylor Co. v. Supervisors* (1902) 135 Cal. 486

24

(*Stanley-Taylor*).  (See *Michael Leslie, supra,* 207 Cal.App.4th at p. 1026.)  In *Stanley-Taylor*, our Supreme Court considered the decision of San Francisco's board of supervisors to reject all bids for a contract to provide the city with certain office forms under a city charter provision that permitted such a decision if " 'the supervisors believe that the public interests will be subserved thereby.' " (*Stanley-Taylor*, at pp. 487–488.)  The court held that mandamus was not available to review the supervisors' belief that the public interest would be served by their decision.  Because the law vested the board of supervisors with discretion to make that determination, " 'the writ of mandate will not lie to divest or mold or otherwise interfere with such discretion.' "  (*Id.* at p. 488.)

In *Stanley-Taylor*, our Supreme Court approved the opinion of the lower court in that case, which included the general statement that the " 'writ of mandate will lie to correct illegal but not capricious acts.' "  (*Stanley-Taylor, supra,* 135 Cal. at p. 488.)  As a statement of general principle, this language has been superseded by our Supreme Court's subsequent explanation that a court may review an agency's "quasi-legislative" decisions more broadly to determine whether they were "arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair." (*Fullerton, supra,* 32 Cal.3d at p. 786; see also *Glendale, supra,* 15 Cal.3d at p. 344, fn. 24 [mandamus will lie to " 'correct an abuse of discretion' " by a public officer or board]; *Manjares v. Newton* (1966) 64 Cal.2d 365, 370 ["That mandate will lie whenever an administrative board has abused its discretion is a rule so well established as to be beyond question"].)  The court also subsequently distinguished *Stanley-Taylor* in a case that concerned objective limitations on a

25

government entity's discretion, noting that in *Stanley-Taylor* "the board had a right to reject bids according to its own belief as to the public interest." (*Landsborough v. Kelly* (1934) 1 Cal.2d 739, 744.) Thus, *Stanley-Taylor* stands for the more limited but still highly relevant principle that a court considering a petition for writ of mandate may not review an agency's subjective assessment of interests that are within its discretion to determine.[9]

That principle controls here. This court may not interfere with the District's discretionary decision that denying Appellants' applications to purchase surplus water was in its best interest. We may not substitute our judgment for the District about how its interests would best be served. So long as the District actually exercised such discretion, this court may not issue a writ contravening the District's decision.

---

[9] Citing *Stanley-Taylor, supra,* 135 Cal. at page 488, the trial court here formulated a general principle that, as a matter of law, "a writ of mandate will lie to correct illegal, but not capricious rationale determined by an irrigation district board of directors to be in the best interest of the district." For the reasons discussed above, we disagree with this formulation of the controlling legal standard. However, we agree with the trial court's specific ruling that only the District itself "has the authority to determine what might be in the best interest of the district." So long as the District in fact exercised its discretion to determine whether the sale of surplus water was in its interest, a court may not interfere with that determination.

### iii. *The District exercised permissible discretion in deciding not to do business with Appellants*

As the trial court noted, the District submitted evidence that Sweigard denied Appellant's application to purchase surplus water because Appellants' principal, Thomason, was "difficult to do business with and . . . it was in the district's best interest not to enter into additional contracts with the businesses Mr. Thomason managed." The trial court found that "[t]he weight of the substantial evidence provided establishes that Mr. Sweigard actually and reasonably believed that Mr. Thomason was difficult to do business with and actually and reasonably believed that it was in the district's best interest not to enter into additional contracts with the businesses Mr. Thomason managed."

The record supports the trial court's conclusion. In his declaration, Sweigard testified that he decided that the "District should not sell water to [Appellants] for the out-of-district property in 2019" because it was in the District's best interest to "limit its involvement and engagement with [Appellants] in an effort to avoid distractions and unnecessary disputes, and to better manage and allocate the District's limited resources and apply them towards its core mission and duties to its members." Sweigard identified a number of such disputes with Appellants, including: "disagreements over the nature of the District's rights to its Main Canal, which runs through [Appellants'] land; disputes as to the District's right to remove dirt from the area around its Main Canal; [Appellants'] complaints about dust from the District's operation of and access to its Main Canal; a pipeline [Appellants] installed in the bank of the Main Canal without authorization" and "the use, maintenance, collapse by

27

[Appellants], and replacement of a bridge over the [District's] Main Canal."

Appellants did not dispute below, and do not deny on appeal, that there were a number of prior controversies between them and the District. As the trial court noted, Appellants themselves submitted evidence concerning past disputes, including Appellants' claim that the District illegally removed soil from Appellants' land and their demand that the District build a bridge over its canal on Appellants' property. In fact, Appellants' counsel detailed a number of ongoing disputes in one of the letters exchanged with the District in 2019 concerning the District's decision not to sell them surplus water.

On appeal, Appellants attack the District's proffered reasons as "nonsensical" because none of the prior disputes between the parties concerned the purchase of surplus water and because the District sold Appellants such water in 2017 and 2018 despite the existence of these disputes. These arguments challenge the reasonableness of the District's decision but not the reasonableness of the trial court's factual findings that the District in fact decided its best interests would be furthered by denying Appellant's application to purchase surplus water. Whether this court agrees with the District's decision is not the issue. The issue is whether the District actually exercised its discretion in deciding not to do business with Appellants. Appellants' argument does not show that the District must have made its decision on some other ground. The District simply may have wished to avoid the perceived difficulties of dealing with Thomason, regardless of the nature of the prior disputes, and despite the District's willingness to sell water to Appellants in

the past. Because substantial evidence supports the trial court's findings, we do not disturb them on appeal.[10]

Appellants also challenge the legitimacy of the District's decision by arguing that the trial court erred in finding that the District implicitly ratified Sweigard's actions. That argument fails because Appellants have not provided any support for the claim that the board's express ratification of Sweigard's decision to deny Appellants' application for surplus water was legally required. As discussed above, section 22259 requires only that an irrigation district's board find that it is in a district's best interest to *sell* or *lease* surplus water, not to decline to do so.[11] There is no dispute that the District's board here actually approved the sale of surplus water to out-of-district users in 2019. Appellants do not identify any additional legal requirement that, once such a decision has been made, a district board must expressly approve

---

[10] Appellants filed a motion requesting that we take judicial notice of the trial court's findings on a motion for a preliminary injunction in another lawsuit between the parties concerning the District's claim that Appellants took water from the District without authorization. That claim concerns events that occurred after the District's denial of Appellants' application to purchase surplus water that is at issue here. It is therefore irrelevant to the basis for the District's decision. We deny the request for judicial notice on that ground.

[11] The distinction makes sense in light of an irrigation district's primary purpose to provide surface water to users *within* the district. Before disposing of surface water by selling to out-of-district users, a board must make the decision that there is such surplus water and that it is in the district's best interest to sell it outside the district.

29

every contract to every out of district user or ratify every decision not to sell to a particular applicant.

Under section 21185, the District's board had the authority to specify the duties of the District's employees, including Sweigard. The trial court found that, in his position as general manager, Sweigard had the delegated authority to deny Petitioner's application for surplus water. That finding is supported by the testimony of Sweigard as well as testimony from a member of the board. Proof that the District's board ratified Sweigard's decision was therefore unnecessary.

## C. *Appellant's estoppel theory does not provide a basis for writ relief*

Appellants argue that the trial court erred in finding that they had forfeited their estoppel theory by failing to offer legal authority supporting it. Echoing their procedural complaints, Appellants argue that the trial court's briefing order did not provide them with an opportunity to brief the issue. For the reasons discussed above, we reject this procedural argument.

In any event, on appeal Appellants do not provide any ground to conclude that they were prejudiced by the trial court's forfeiture finding. The trial court's ruling included a comprehensive substantive analysis rejecting Appellants' estoppel theory on the merits. Based upon the evidence, the trial court found that the "only act by [Appellants] in reliance on the March 6, 2019 Press Release was to submit 2019 Temporary Water Transfer Application and Agreements after receiving a voice message that any such applications would not be approved." On appeal, Appellants do not explain how any additional briefing could have changed the trial court's reasonable conclusion that this minimal alleged reliance did not create any enforceable

30

obligation by the District to grant the application that Appellants submitted.  Appellants' estoppel argument therefore does not provide any basis for reversal.

### DISPOSITION

The judgment is affirmed.  The Merced Irrigation District is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.



31